**HILAND POTATO CHIP COMPANY,**
**Appellant,**

v.

**CULBRO SNACK FOODS, INC.,**
**Appellee.**

No. 83–1156.

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1983.

Decided Nov. 10, 1983.

Rehearing Denied Jan. 12, 1984.

Edmund J. Sease, Bruce W. McKee, and Zarley, McKee, Thomte, Voorhees & Sease, Des Moines, Iowa, for appellant Hiland Potato Chip Co.

Siegrun D. Kane, David H.T. Kane, and Kane, Dalsimer, Kane, Sullivan & Kurucz, New York City, for appellee, Culbro Snack Foods, Inc.

Before LAY, Chief Judge, SWYGERT,* Senior Circuit Judge, and ARNOLD, Circuit Judge.

* Luther M. Swygert, Senior Circuit Judge, United States Court of Appeals for the Seventh     Circuit, sitting by designation.

PER CURIAM.

This is an action for trademark infringement and unfair competition. Each party seeks to enjoin the other's use of the trademark "Kitty Clover" on potato chips in the Kansas City trade area. The Kansas City trade area comprises the Kansas City area in the state of Kansas, most of the state of Missouri, and Arkansas. It is undisputed that Culbro Snack Foods, Inc. (Culbro) has undisputed rights to "Kitty Clover" in the remainder of the United States.

The district court, the Honorable Harold D. Vietor presiding, granted Culbro's motion for preliminary injunctive relief. Hiland appealed and this court upheld the lower court's determination.[1] The case was remanded for findings on Culbro's claim that Hiland had abandoned the mark. Upon remand the court entered judgment dismissing Hiland's complaint and found in favor of Culbro on its counterclaim. *Hiland Potato Chip Co. v. Culbro Snack Foods, Inc.,* No. 81–198–D (S.D.Iowa Dec. 14, 1982). Hiland now appeals from that judgment.

The facts found by the district court are as follows: The mark "Kitty Clover" was registered in 1938 by Culbro's remote predecessor, Kitty Clover Potato Chip Company of Omaha, Nebraska, which mark is valid and subsisting and owned by Culbro. In 1956 the Omaha company agreed with its plant in Kansas City (operated since the 1950's by family relatives) whereby the Kansas City plant was allowed to make, use and sell Kitty Clover potato chips in the limited area served by the Kansas City plant, referred to as the Kansas City trade area. In 1959, the original Kitty Clover Omaha company was sold to Fairmont Foods Company which in turn sold to Culbro in 1978 (such sale included the "Kitty Clover" trademark).

In the 1970's the Kansas City Kitty Clover Company changed its name to Clary House, which operated until its bankruptcy in September, 1980. Hiland's immediate predecessor, Cardinal Distributing Company (Cardinal), owned by Harold Balagna, bought Clary House's route trucks, customer lists and tradenames, including "Kitty Clover," in the bankruptcy proceedings. A few weeks later, on November 7, 1980, Cardinal agreed with Hiland to distribute Hiland's potato chips to its customers. The agreement gave Cardinal the right to sell $50,000 worth of Kitty Clover products a year. However, Cardinal never exercised that right, although Cardinal did redistribute some returned Kitty Clover stock previously distributed by Clary House.

On November 10, 1980, the sales manager of Cardinal, Mr. Kiefer, mailed a communication to Clary House customers which in part states:

As you know, Clary House has been going through several crises which have resulted in numerous problems. Effective November 7, 1980, we became associated with Hiland Potato Chips, Inc. (Our New Company Name is Cardinal Distributing.) These changes will result in a much improved program, with a complete merchandized line of product as outlined in the enclosed price list.

. . . . .

Because of the apparent lack of interest on the part of the large eastern corporation owning the Kitty Clover Brand Name, the new local business decided to become associated with, and to sell, Hiland Brand Potato Chips and Snacks. The Kitty Clover, Cardinal, and Clary House Brand names will be eliminated from Missouri and Arkansas. This decision to introduce a new brand to most of you will make us part of one of the largest regional Brands in the United States. (All items will be under the Hiland Label.) Hiland Route Distribution will include the following states: South Dakota, Minnesota, Nebraska, Iowa, Illinois, Missouri, Kansas, Arkansas, and Oklahoma.—North and South through the Middle States of our country.

*Id.* at 5 (footnote omitted).

The enclosed price list included only "Hiland" brand products.

<hr />

1. *Hiland Potato Chip Co. v. Culbro Corp.,* 671 F.2d 1190 (8th Cir.1982).

Mr. Balagna, the president of Cardinal, did not specifically authorize Kiefer to write the November 10 communication, but he saw the communication and did nothing to communicate a retraction of any statements in it.

Immediately after the distribution of the November 10 Kiefer communication, Culbro learned of the communication and began distributing its Kitty Clover brand potato chips in the Kansas City trade area. On November 19, 1980, Cardinal sent a notice of infringement to Culbro demanding that Culbro discontinue its use of "Kitty Clover" in the Kansas City trade area, but did not advise Culbro that Cardinal was using or intended to use "Kitty Clover." The infringement claim was continuously asserted by Balagna on behalf of Cardinal and by Hiland, Cardinal's successor.

While distributing for Hiland, Cardinal made no distribution of potato chips under the "Kitty Clover" mark.

On February 28, 1981, Cardinal conveyed to Hiland its distribution routes, trucks, trademark rights and other assets and good will. Subsequently, Hiland began to distribute in the Kansas City trade area some of its potato chips under the "Kitty Clover" mark and continued to do so until the preliminary injunction was issued.

On appeal Hiland urges that a trademark which has not been used for a period of time does not become legally abandoned unless the trademark owner intends the abandonment to occur, and in this case Cardinal did not so intend. Culbro on the other hand contends that to defeat a claim of abandonment based upon nonuse, intent to resume use is required.

The trial court resolved this issue in favor of Culbro, and found an abandonment of the mark by Hiland. The court predicated its conclusion upon 15 U.S.C. § 1127, quoting it in part as follows: "A mark shall be deemed to be 'abandoned'—(a) When its use has been discontinued with intent not to resume. Intent not to resume may be inferred from circumstances." The court concluded that "A public announcement of intention to discontinue the sale of a product may be a circumstance from which an intent not to resume may be inferred," citing *Sutton Cosmetics (P.R.) Inc. v. Lander Co.,* 170 U.S.P.Q. 461, 462 (S.D.N.Y.1971), *aff'd as modified,* 455 F.2d 285 (2nd Cir.1972).

In analyzing "intent" the trial court stated:

Objective evidence of abandonment outweighs a party's testimony that there was no intent to abandon a mark. "If all a party had to do to avoid a holding of abandonment was to testify that he never had any intent to abandon the mark, then no mark would ever be held abandoned." McCarthy, *Trademarks and Unfair Competition,* Vol 1, § 17:3C (1973).

"A party's testimony that he had no intent to abandon may be outweighed by his actions, which may speak louder than his words: '[T]he purely subjective intention in the abandoner's mind to re-engage in a former enterprise at some indefinite future time is not sufficient to avoid abandonment where an objective analysis of the situation furnishes ample evidence to warrant the inference of abandonment.'" *Id.*

The November 10 communication from Kiefer was not equivocal. It stated that the Kitty Clover brand name "will be eliminated" and it further stated: "All items will be under the Hiland label." All items in the enclosed price list were Hiland brand products. It is hard to imagine how a public declaration of discontinuance of a trademark could be more clear.

*Id.* at 9.

As to Hiland's contention that the Kiefer communication was unauthorized, the court found and concluded that Balagna ratified it under the law of agency because he did nothing to retract after learning of its existence.

The court concluded its discussion of the abandonment issue, stating:

The court finds as an ultimate fact that Cardinal, acting through Mr. Balagna and Mr. Kiefer, beginning the Friday before November 10, 1980, and continuing

through the date shortly thereafter that Culbro began distributing Kitty Clover chips in the Kansas City trade area, discontinued use of the Kitty Clover mark in the Kansas City trade area with an intent not to resume its use.

*Id.* at 10.

■ In *Exxon Corp. v. Humble Exploration Co., Inc.,* 695 F.2d 96, 102–03 (5th Cir. 1983) it is stated:

There is a difference between intent not to abandon or relinquish and intent to resume use in that an owner may not wish to abandon its mark but may have no intent to resume its use.... An "intent to resume" requires the trademark owner to have plans to resume commercial use of the mark. Stopping at an "intent not to abandon" tolerates an owner's protecting a mark with neither commercial use nor plans to resume commercial use. Such a license is not permitted by the Lanham Act.

We endorse that statement and find its application controlling here. The trial court found that in its November 19, 1980, infringement notice to Culbro, Cardinal did not advise Culbro that Cardinal was using or intended to use "Kitty Clover." It further found that while Cardinal functioned as a distributor for Hiland for nearly a four month period, Cardinal did not distribute any "potato chips under the Kitty Clover mark, except that it did retrieve some Kitty Clover chips previously distributed by Clary House from customers who no longer wanted them and resold those chips to other customers." After Hiland purchased Cardinal's assets on February 28, 1981, it began distribution of some of its potato chips under the "Kitty Clover" mark in the disputed trade area. However, that does not lend support to Hiland's position. It is the activity of Cardinal prior to its sale to Hiland which is determinative.

We agree with the trial court's determination of this issue and find no evidence that Cardinal intended to resume commercial use of the mark. Thus, there exists no evidence to negate its abandonment.

■ The remaining issue for disposition is whether or not Hiland is equitably estopped from denying an intent not to resume use of the "Kitty Clover" trademark. The district court set forth the elements of estoppel as follows:

(1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the misleading conduct or false representations of the party to be estopped; and (3) change in position based thereon to his injury, detriment or prejudice.

*Id.* at 10, *quoting United States v. Aetna Casualty & Surety Co.,* 480 F.2d 1095, 1099 (8th Cir.1973).

Hiland does not dispute these elements, but argues they have not been established by Culbro. The trial court held that:

Culbro has established the essential elements of estoppel to preclude Hiland from asserting that Cardinal did intend to resume use of the Kitty Clover trademark. Culbro has proved that it had no knowledge or means of knowing that Cardinal intended the opposite of the declarations in the Kiefer communication, that it relied in good faith on those declarations, and that it changed its position in reliance on those declarations to its detriment.

Cardinal's protestations of infringement came after Culbro changed its position in reliance on the November 10 communication.

*Id.* at 11.

We agree with this conclusion.

We have carefully examined the briefs of the parties and the record in this case and conclude that the judgment entered herein is based on findings of fact that are not clearly erroneous.

Affirmed. *See* 8th Cir.R. 14.