**SEMLER CONSTRUCTION, INC., Appellant,**

v.

**CITY OF HANOVER, Respondent.**

No. C6–02–2151.

Court of Appeals of Minnesota.

Aug. 19, 2003.

Considered and decided by KALITOWSKI, Presiding Judge, RANDALL, Judge, and WILLIS, Judge.

## OPINION

RANDALL, Judge.

This is an appeal from a district court decision upholding the city's denial of final plat approval for a subdivision that had been given preliminary approval. The district court reasoned that a one-year ap-

proval period had run and found that an interim moratorium applied to Semler. The district court granted summary judgment for the city on Semler's damage claim.

Semler contends the denial was erroneous as a matter of law because (a) it had been given approval of the preliminary plat for an eight-year period; (b) the interim moratorium did not apply; and (c) there are genuine issues of material fact precluding summary judgment on the issue of damages. We reverse and remand.

## FACTS

In spring 1999, appellant Semler Construction, a development company, began the process of obtaining approval from respondent City of Hanover for a residential development project known as Crow River Heights East. Its co-developer, Gold Nugget Development, Inc. (not a party to this lawsuit), likewise sought approval for the development of an adjacent property, known as Crow River Heights West. Through these developments, 462 or 463 residential units would be built.

According to the then-city administrator, there were numerous city council and planning commission meetings concerning the project. At these meetings, concerns were raised by the city and some neighbors as to whether all the lots would be final platted and marketed in a short period of time, and whether the infrastructure (sewer, water, roads, etc.) could accommodate such a large increase in the number of houses in the city. Thus, according to a May 3, 2000, report issued by the city planner, the project was revised to address these concerns and provided for phased development over a seven-year period, with construction of approximately 70 homes per year. Semler went along with the city's suggestion as to phasing in the 400 plus homes over a period of years.

Shortly thereafter, at its May 16, 2000, regularly scheduled meeting, the city council adopted resolution 05–00–05 and conditionally approved the preliminary plat for the development projects. On July 18, 2000, in ordinance 00–04, the city council rezoned the land that was to be developed from RA-residence-agriculture to R1A-single-family residence with PD-planned-development overlay. This rezoning conformed to the city's comprehensive plan, thus allowing the development project to proceed.

On October 17, 2000, the city council adopted resolution 13–00–10, authorizing the city administrator and mayor to execute, in relevant part, a master subdivision agreement and a subdivision agreement for the first phase of Crow River Heights East with Semler and Gold Nugget for the first phase of the project, consisting of 47 lots. Under the resolution, however, the city noted that it was nonetheless "reserving all rights it has under law to accept, reject, or modify any plat presented to them." Pursuant to this authority, on November 1, 2000, Semler, Gold Nugget, and the city, as represented by the mayor and city administrator, entered into the master subdivision agreement. It provided, in relevant part, that the preliminary plat would be valid for an eight-year period:

> The preliminary plat shall be valid for a period of eight years. If any portion of Crow River Heights East or West shall not be finally platted within eight years, the preliminary plat approval as to the property not finally platted shall terminate. Extensions may be granted at the option and in the discretion of the City. This paragraph shall be deemed an extension in accordance with § 5.02, subdivision 3b, of the City of Hanover subdivision ordinance * * *.

Also on November 1, 2000, the city and Semler entered into the subdivision agree-

ment for the final plat of the first phase of the project, encompassing 47 lots, known as the Crow River Heights East First Addition. On November 21, 2000, the city council adopted resolution 12–00–11, approving the final development plan for the overall Crow River Heights project. It also adopted resolution 13–00–11, approving the final plat of the Crow River Heights East First Addition.

In city elections held in November 2000, a new council member, who had opposed the Crow River Heights project as a private citizen, and a new mayor were elected.

On January 2, 2001, the newly constituted city council held its first meeting of the year. In this meeting, the city council approved interim ordinance 01–01, which established a 12–month moratorium on residential development within the city, under Minn.Stat. § 462.355, subd. 4. On December 18, 2001, the city council adopted interim ordinance 2002–01, which extended the moratorium for an additional 18 months but exempted the Crow River Heights First Addition, which had already received final plat approval.

On January 30, 2002, Semler applied to the city for final plat approval of the next phase of the Crow River Heights project, the Crow River Heights East Second Addition. Semler asserted that the final plat for the Crow River Heights East Second Addition complied with requirements of the approved preliminary plat, the master subdivision agreement, and the approved final development plan.

On March 19, 2002, however, the city council adopted resolution 06–03–02, which denied final plat approval of the Crow River Heights East Second Addition. The stated reasons for the denial were as follows:

> The City of Hanover finds the final plat application for Crow River Heights East Second Addition was filed more than one year from the date of preliminary plat approval as provided in the Minnesota Statutes 462.358; and
>
> The final plat application is subject to the restrictions and limitations set forth [in] the Moratorium Ordinance, and is not subject to the exemptions provided in Section 4 of the Moratorium Ordinance.

Semler sued the city in early May 2002 on a variety of claims connected with the denial of its application for final plat approval. It also challenged an assessment it had been charged on the entire project, and it sought monetary damages for the city's action in stopping its construction activities.

The city removed the case to federal district court, which then remanded the matter back to state court after Semler voluntarily dismissed its federal-law claims. Upon remand, the city moved for summary judgment on all of Semler's remaining claims, and Semler filed a cross-motion for its claim related to the denial of final plat approval. The district court denied Semler's motion and granted the city's motion for summary judgment. This appeal followed.

### ISSUES

I. May a city deny final plat approval for development project based on the developer's failure to seek such approval within a year of preliminary approval under Minn.Stat. § 462.358 (2002) and based on an interim moratorium under Minn. Stat. § 462.355, subd. 4 (2002), where the preliminary plat approval had been given for an eight-year period prior to the enactment of the interim moratorium?

II. Do genuine issues of material fact exist as to Semler's claims for monetary

damages for violation of the city's duty of good faith and fair dealing?

## ANALYSIS

■ In reviewing summary judgment, the appellate court must determine whether there are genuine issues of material fact and whether the district court erred as a matter of law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The interpretation of ordinances is a question of law reviewable de novo. *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 608 (Minn.1980).

■ A challenge to a city council's zoning decision is initially reviewed by the district court. Minn.Stat. § 462.361, subd. 1 (2002); *City of Hibbing v. Baratto*, 620 N.W.2d 58, 59–60 (Minn.App.2000). But the appellate court conducts an independent review of the decision by the city council, without deferring to the district court. *Chase v. City of Minneapolis*, 401 N.W.2d 408, 412 (Minn.App.1987).

## I.

At issue is whether the city proceeded legally when it denied Semler's application for final plat approval. Resolution of the issue requires an analysis of the statutory scheme for municipal planning along with the city ordinances, and, as well, the relevant statutes.

Under the municipal-planning statutes, municipalities may adopt a comprehensive municipal plan, Minn.Stat. § 462.3535, subd. 1 (2002); zoning ordinances, Minn. Stat. § 462.357, subd. 1 (2002); and subdivision regulations, Minn.Stat. § 462.358, subd. 1a (2002). Specifically, a municipality may adopt regulations governing the development of subdivisions. Minn.Stat. § 462.358 (2002). These regulations may be comprehensive, addressing "without limitation" such areas as size, location, roads, water supply, and conservation.

Minn.Stat. § 462.358, subd. 2a. The municipality may condition approval of the subdivision on such matters as "construction and installation of sewers, streets, electric, gas, drainage, and water facilities." *Id.*

The regulations may also require that the proposed subdivision be platted. Minn.Stat. § 462.358, subd. 3a. Platting means the preparation of a map to be filed of record, "containing all elements and requirements set forth in applicable local regulations adopted pursuant to section 462.358 and chapter 505." Minn.Stat. § 462.352, subd. 13 (2002). Thus, the statutes envision that the plat will contain a comprehensive description of the proposed subdivision.

■ Finally, the statutory scheme envisions a two-step process for approval of the subdivision plans, involving preliminary and final plat approval. Minn.Stat. § 462.358, subd. 3b. At first glance, "preliminary" approval would seem to imply a mere "introductory or prefatory" stage of the proceedings. *The American Heritage Dictionary* 1429 (3d ed.1992) (defining preliminary). For example, a preseason game in the National Football League is truly "preliminary." Such games are mere preparation for the official season and *do not count* as official games, do not count in the standings, and have no impact on positioning for post-season play. On the other hand, the statutory definition of "preliminary approval," however, shows that it is *intended to be comprehensive* and, in fact, *is* the most important step in obtaining approval of the subdivision. *See* Minn. Stat. § 462.352, subd. 16. "Preliminary approval" means

*official action* taken by a municipality on an application to create a subdivision *which establishes the rights and obligations* set forth in section 462.358 and

the applicable subdivision regulation. In accordance with section 462.358, and unless otherwise specified in the applicable subdivision regulation, preliminary approval may be granted only following the review and approval of a preliminary plat or other map or drawing establishing without limitation the number, layout, and location of lots, tracts, blocks, and parcels to be created, location of streets, roads, utilities and facilities, park and drainage facilities, and lands to be dedicated for public use.

*Id.* (emphasis added).

Amicus curiae Builders Association of the Twin Cities explained the importance of the preliminary plat:

> The significance of receiving preliminary plat approval in the real estate development cannot be overstated. The term "preliminary" approval is misleading because preliminary plat approval establishes the nature, design and scope of a development project and triggers significant activity by both developers and cities. Upon receiving preliminary plat approval, development agreements are signed, grading and infrastructure installation begins, and property marking may begin. Those activities are undertaken with the expectation that the entire area encompassed by the preliminary plat will be final platted and developed over time and in accordance with guidelines established in the preliminary plat.

The amicus curiae argument is a correct statement of the legal significance and the importance of preliminary plat approval.

In this case, the city council's resolution approving the preliminary plat contained extensive findings as to the planned development, including that it was not in conflict with the city's comprehensive land-use plan, or the intent of the zoning or other city code provisions. The resolution found that the development was feasible, of adequate size, and results in a well-planned system of streets and trails; that it would not excessively burden public facilities and utilities; that it would not have an undue impact on the reasonable enjoyment of neighborhood property; and that it would "substantially enhance the aesthetics and the site and will create a public benefit that is greater than the strict application of the zoning regulations."

The resolution required Semler's compliance with numerous conditions and requirements regarding trees, landscaping, architectural designs, sewer, water, drainage, wetland mitigation, and related areas. It also required compliance with park requirements, housing locations, and setbacks, as well as the construction of trails and the creation of homeowner associations to care for common areas. The resolution approving the preliminary plat was comprehensive, extensive, and complete.

As amicus points out, it is of "manifest importance" that the Master Project Agreement and respondent's resolutions and ordinances work together to implement a public policy of beneficial long-term development. Failing to do so discourages developers from putting their resources into long-range development and land-use planning. This can result in poor utilization of land and insufficient infrastructure.

We now return to the statutory provisions that apply when, as in this case, the developer has obtained preliminary plat approval. After the city grants approval of a preliminary plat, the statute allows the applicant to seek final approval. Minn. Stat. § 462.358, subd. 3b. If the applicant has complied with the conditions and requirements set out in the preliminary approval, the municipality must grant final approval within 60 days. *Id.* If the municipality fails to act, the application will nonetheless be deemed approved. *Id.* Thus,

the statute places *primary emphasis* on the preliminary plat approval; once the conditions and requirements therein are satisfied, the plat mechanically receives final approval. *See id.*

Finally, also of importance in the statutory scheme is the protection provided to the preliminary plat once it is approved. For one year following approval of the preliminary plat, it is exempt from amendments to comprehensive plans or official controls. *Id.,* subd. 3c; *see* Minn.Stat. § 462.352, subd. 15 (defining official controls as ordinances and regulations affecting zoning, subdivision controls, and codes). Further, the municipality may extend this period of preliminary approval pursuant to its regulations. Minn.Stat. § 462.358, subd. 3c. Also, a new application may not be required if "substantial physical activity and investment has occurred in reasonable reliance on the approved application and the subdivider will suffer substantial financial damage." *Id.*

> In connection with a subdivision involving planned and staged development, a municipality may by resolution or agreement grant the rights referred to herein for such periods of time longer than two years which it determines to be reasonable and appropriate.

*Id.* In addition, while the city may place an interim moratorium on development, the moratorium may not apply to development projects that have already received preliminary plat approval. Minn.Stat. § 462.355, subd. 4 (2002).

■ Applying the law to Semler's challenge to the city's denial of its application for final plat approval, Semler's legal arguments are persuasive. The city based its denial of Semler's application for final plat approval first on the determination that it "was filed more than one year from the date of preliminary plat approval" as provided in Minn.Stat. § 462.358. Semler ar-

gues that because the city extended its approval of the preliminary plat to eight years in the subdivision master agreement, the one-year period does not apply. We agree. In fact, this issue *should not even be in dispute.*

We first briefly review relevant dates and actions. The city council approved the preliminary plat on May 16, 2000. On October 17, 2000, the city council authorized the city administrator and mayor to execute the master subdivision agreement. Pursuant to this authority, on November 1, 2000, the city administrator and mayor entered into a master subdivision agreement explicitly providing that the "preliminary plat shall be valid for a period of eight years," and deeming it to be an extension in accordance with the City of Hanover's subdivision ordinance section 5.02, subdivision 3(b).

The city however, claims this paragraph "does not necessarily" serve to extend the approval period of this preliminary plat to eight years. We will address this argument by examining the relevant statute. A preliminary plat is not subject to any amendments to the comprehensive plan or official control for one year following its approval and a final plat is not subject to such amendments for two years following approval. Minn.Stat. § 462.358, subd. 3c. Pursuant to its regulations, the municipality may extend this period by agreement with the subdivider. *Id.* For a subdivision involving planned and staged development, a municipality may by resolution or agreement extend this period longer than two years if it deems it to be reasonable and appropriate. *Id.* Semler contends that the Crow River Heights project is a textbook example of "planned and staged development," i.e., a project that contemplates staged development for a period of time extending over several years. Semler is correct.

The city makes several arguments in support of its claim that the extension does not apply. We first review the ordinance under which the extension was granted:

Conditional approval of a preliminary plat shall not constitute approval of the final plat (subdivision plat). Rather it shall be deemed to be an expression of approval to the layout submitted on the preliminary plat, and act as an authorization and guide to proceed with the preparation of the final plat. This approval of the preliminary plat shall be effective for a period of six (6) months, unless an extension is granted by the City Council.

Hanover, Minn., Mun.Code ch. 30, § 5.02, subd. 3(b). The city contends that ordinance 5.02 does not authorize the city council to make an agreement with a subdivider so as to exempt a preliminary plat from any regulations dealing with either density, lot size, lot layout, dedication, or platting. But Semler does not seek such an exemption. There is no showing that its preliminary plat did not comply with statutory requirements. The city also argues that the language of the ordinance itself expressly provides it is not approval of a final plat but only serves as an "authorization and guide to proceed" with the final plat, giving itself authority to extend approval past the six-month period. It contends that the ordinance does not authorize implementation of Minn.Stat. § 462.358, subd. 3c. We can only note that the plain language of the ordinance allows allows the city to authorize an extension of the preliminary plat approval, which it did.

Next, the city argues there was no agreement under Minn.Stat. § 462.358, subd. 3c, between the city and Semler setting forth the term of the exemption. The city argues it only authorized the mayor and city administrator to enter into the master subdivision agreement, apparently suggesting that it was not bound by the provision in the master subdivision agreement providing for the eight-year exemption. We do not understand the argument. First, a city has authority to enter into contracts. This statement needs no explanation; it defines itself. "Every contract * * * or other written instrument shall be executed on behalf of the city by the mayor and clerk * * * and only pursuant to authority from the council." Minn. Stat. § 412.201 (2002); *see* Minn.Stat. § 412.221, subd. 2 (2002) (authorizing council to make contracts).

The extension at issue was specifically authorized by the city. On October 17, 2000, the city council passed resolution 13–00–10 authorizing the city administrator and mayor to enter into the master subdivision agreement. Pursuant to this authority, Semler and the city entered into the master subdivision agreement, binding the city. Paragraph 11 of the agreement explicitly provides that "the preliminary plat shall be valid for a period of eight years." The city authorized preliminary plat approval to last eight years to allow for the staged development it wanted. The *city itself sought the staged development* so that its infrastructure would not be overwhelmed by development of the project in a one-year period.

Next, the city cites language in paragraph 8 of the master subdivision agreement, as well as the October 17 authorization to enter the agreement, stating that the city reserved all rights to accept, reject, or modify any plat. We can only state this language does not remotely affect the issue at hand, which is whether the eight-year extension applies. It does.

In conclusion, the city's denial of the application for final plat approval based on the determination that the application was filed more than a year after the prelimi-

nary plat approval is erroneous as a matter of law. The city agreed, pursuant to authority of Minn.Stat. § 462.358, subd. 3c, and ordinance 5.02, subd. 3(b), to extend the preliminary approval period for this planned and staged development to eight years. The city's denial on the basis of a "one-year window" to get final approval, on these facts, is erroneous. The city is estopped from arguing the one-year approval period as a matter of law.

■ The city's second reason for denying Semler's application for final approval was its determination that its interim moratorium ordinance applied:

> The final plat application is subject to the restrictions and limitations set forth [in] the Moratorium Ordinance, and is not subject to the exemptions provided in Section 4 of the moratorium ordinance.

■ As part of its comprehensive planning, a municipality may enact a temporary moratorium on development. Minn.Stat. § 462.355, subd. 4. If the municipality is conducting studies to consider amending its comprehensive plan or official controls, the council may adopt an interim ordinance "for the purpose of protecting the planning process and the health, safety and welfare of its citizens." *Id.* In such an ordinance, the council may adopt a temporary moratorium to "regulate, restrict or prohibit any use, development, or subdivision within the jurisdiction * * * for a period not to exceed one year from the date it is effective, and may be extended for such additional periods" as deemed necessary, not to exceed 18 months. *Id.* This moratorium cannot, however, apply to preliminary plat approvals given to a subdivision enacted prior to the effective date of the interim ordinance:

> No interim ordinance may halt, delay, or impede a subdivision which has been given preliminary approval prior to the effective date of the interim ordinance.

*Id.* A moratorium is a valid exercise of a municipality's police powers. *Wedemeyer v. City of Minneapolis,* 540 N.W.2d 539, 542 (Minn.App.1995).

To resolve this argument, we must address whether the preliminary plat approval had been given prior to the effective date of the moratorium. On May 16, 2000, the city council approved the preliminary plat. On October 17, 2000, the city council authorized the city administrator and mayor to execute the master subdivision agreement. Pursuant to this authority, on November 1, 2000, the master subdivision agreement was entered into, in which the preliminary plat approval was deemed approved for a period of eight years. On January 2, 2001, the city council adopted the moratorium on development for 12 months and on December 18, 2001, it extended the moratorium another 18 months.

The city argues that it properly enacted the interim ordinance and is proceeding under it because it is conducting a study during its pendency. It cites other steps that it has taken in updating the comprehensive plan. It contends that its ordinance is not arbitrary and capricious as it does not exceed the authority of the city and is a proper and legitimate exercise of the city's police power. We do not know what that argument means. It does not address the issue of whether preliminary plat approval was given *before* the moratorium was in effect.

Minn.Stat. § 462.355, subd. 4, provides that no moratorium may impede a subdivision that has been given preliminary approval prior to the effective date of the interim ordinance. The preliminary plat had already been approved at the time the moratorium was adopted. The city's attempted application of its moratorium to

Semler's plat application is void and of no consequence.

■ Finally, we address Semler's argument that the city is equitably estopped from claiming that the preliminary plat has expired or that the moratorium applies to the final plat application. Although the city contends that Semler is raising this issue for the first time on appeal, Semler argued the issue in its memorandum in opposition to the city's motion for summary judgment, and the district court rejected its argument.

■ Generally, for equitable estoppel to apply,

> the plaintiff must demonstrate that the defendant, through his language or conduct, induced the plaintiff to rely, in good faith, on this language or conduct to his injury, detriment or prejudice.

*Ridgewood Dev. Co. v. State,* 294 N.W.2d 288, 292 (Minn.1980) (citations omitted). Further, the government must have engaged in wrongful conduct. *Id.* at 293. Wrongful conduct requires an affirmative act, rather than inadvertent or mistaken conduct. *In re Westling Mfg., Inc.,* 442 N.W.2d 328, 332 (Minn.App.1989), *review denied* (Minn. Aug. 25, 1989).

Semler contends it is undisputed that the city requested that the Crow River Heights project be developed in phases over several years, due to its concern that it would be unable to absorb a development of the project's size in a short span of time. To accommodate the city's concerns, Semler agreed to the phased development, so it sought and obtained a legally binding commitment from the city that the preliminary plat's approval would remain valid for a period of eight years.

Semler asserts that it committed substantial resources to the project in reliance on the city's assurance. In addition, Semler contends that it did not contest the significant property assessment called for by the master subdivision agreement, on the assumption that the development had gained preliminary approval. It asserts that after new council members took power within the city's government, the city reversed its position and attempted to claim that it had the right to reject Semler's final plat applications for reasons that, as discussed above, were not only "wrongful," but also illegal. Under these circumstances, Semler argues that the city is equitably estopped from denying Semler's final plat application. *See, e.g., Lucio v. Sch. Bd. of Indep. Sch. Dist. No. 625,* 574 N.W.2d 737, 740 (Minn.App.1998) (stating that appellate court decides as a matter of law whether equitable estoppel applies), *review denied* (Minn. Apr. 30, 1998).

We conclude the record shows that the extension was requested by the city and was for the benefit of the city. The city wanted Semler to agree to it, and Semler did. We find the city is estopped from arguing otherwise.

Finally, we address Semler's argument that this court should reverse and remand for the district court to issue a writ of mandamus compelling the city to certify final plat approval. Under the statute, the municipality shall certify final plat approval within 60 days if the applicant

> has complied with all conditions and requirements of applicable regulations and all conditions and requirements upon which the preliminary approval is expressly conditioned either through performance or the execution of appropriate agreements assuring performance.

Minn.Stat. § 462.358, subd. 3b. If the municipality fails to certify final approval as so required, and if the applicant has complied with all conditions and requirements,

the application shall be deemed finally approved. *Id.*

Semler contends it is undisputed that it has complied with all conditions and requirements of applicable regulations relating to the preliminary plat. But as Semler acknowledged at oral argument, final approval is contingent on meeting all conditions and requirements. This court cannot, on this day, from this record, make the determinations, as this court is not monitoring the day-to-day construction activities of Semler and is not validating any change orders or other requests made by the city.

Thus, our remand on this issue is limited to instructing the district court to reconsider Semler's application for a final plat approval, and, if it finds substantial compliance with the application conditions, it shall issue a writ compelling the city to certify final approval. The city is instructed that a good-faith review of Semler's claim that it has complied with all conditions and requirements is part and parcel of this reversal and remand.

## II.

The final issue is whether the district court erred in granting summary judgment on Semler's claims for damages on the basis that the city violated its duty of good faith and fair dealing. Under this doctrine, parties to a contract may not unjustifiably impede the other party from performing its obligations under the contract. *In re Hennepin County 1986 Recycling Bond Litigation*, 540 N.W.2d 494, 502 (Minn.1995).

Semler alleges that during the summer of 2001, the city ordered Semler to cease grading work and other activities that Semler was undertaking in connection with the Crow River Heights First Addition, for which it had received both preliminary and final plat approval. We agree

that Semler has shown genuine issues of material fact as to whether the city violated its duty of good faith and fair dealing. We conclude the issue of damages remains open.

## DECISION

We reverse the district court's grant of summary judgment and remand for further proceedings.

**Reversed and remanded.**