**SAVE LANTERN BAY,
et al., Appellants,**

**v.**

**CASS COUNTY PLANNING
COMMISSION, et al.,
Respondents,**

**Thousand Acres Development,
LLC, Respondent.**

**No. A04–165.**

Court of Appeals of Minnesota.

July 27, 2004.

James P. Peters, Karna M. Peters, Peters & Peters, PLC, Alexandria, MN, for appellant.

Scott T. Anderson, Isaac Kaufman, Ratwik, Roszak & Maloney, P.A., Minneapolis, MN, for respondents Cass County Planning Commission, et al.

Ryan J. Hatton, Rinke–Noonan, St. Cloud, MN, for respondent Thousand Acres Development, LLC.

Considered and decided by WILLIS, Presiding Judge; LANSING, Judge; and HUDSON, Judge.

## OPINION

LANSING, Judge.

Save Lantern Bay appeals from summary judgment that it failed to appeal in a timely manner to the district court from a decision of the Cass County Planning Commission. Save Lantern Bay also appeals from the district court's judgment that Cass County is equitably estopped from revoking the final-plat approval of a parcel owned by respondent Thousand Acres. Because we conclude that the district court erred in its interpretation of the appeals provision of the Cass County Subdivision and Platting Ordinance and in its judgment granting equitable estoppel against the county, we reverse and remand.

## FACTS

Save Lantern Bay is a group of citizens who own property on or near Woman Lake in Cass County. Thousand Acres Development, LLC, owns a parcel of land on Woman Lake that it seeks to develop as lakeshore lots. Cass County Planning Commission (PC) is the local government entity responsible for the review of development proposals in Cass County as governed by state statute and local ordinances. The members of Save Lantern Bay have opposed the development from its inception, due to factors that include its location on a shallow bay and the increased activity that the lots would bring to the surrounding sensitive habitat.

On March 25, 2003, the PC reviewed the preliminary plat of the Woman Lake par-

cel during a public hearing attended by members of Save Lantern Bay. The PC stated that it was reviewing the plat under the standards of a repealed version of the Cass County Subdivision and Platting Ordinance, rather than the version of that ordinance that had taken effect on January 12, 2003. The PC stated that its common practice was to continue to apply the repealed ordinance beyond the effective date of the new ordinance because it allowed a developer to proceed under known law and not have to anticipate changes in the ordinance. In accord with this practice, the Cass County Environmental Services Director told Thousand Acres during the application process and previous to the hearing that "the application would be considered according to the ordinance in effect at the time of the filing." The director explained that proposed amendments to the ordinance could alter provisions that governed the development and assured the developer that any amendments would not apply to the development.

The amended Subdivision and Platting Ordinance contained one change in particular that affected the provision governing the development of the Woman Lake parcel. Section 5.02.08 of the ordinance governs the size and nature of common-access lots, defined as "[l]ots intended as controlled accesses to public waters or as recreation areas for use by owners." Cass County, Minn., Subdivision and Platting Ordinance § 5.02.08 (2003). The ordinance previously governed only common-access lots provided for non-riparian (i.e., not contiguous with shoreline) lots, but the 2003 ordinance extended these limits to access lots provided for riparian lots. Id., § 5.02.08(C). Also, while the ordinance still required that the size of the common-access lot must increase commensurate with the volume of its proposed usage, that usage was now measured in a new way. Previously, Cass County measured usage of common-access lots by the number of watercraft docked, moored, or stored at the access lot; but the 2003 ordinance considered the number of residence lots within a plat entitled to use the common-access lot. Id. What did not change was the requirement that the common-access lot must increase in size by twenty-five percent for each boat or residence lot beyond a baseline quantity of six. Id. Under our reading of the facts of this case, application of these new standards would likely have altered the Woman Lake plat by reducing the number of residential lots.

The PC approved the preliminary plat by unanimous vote at the March 25, 2003 hearing. As required by the ordinance, the PC met again to approve the final plat on April 22, 2003, a necessary predicate in Cass County to final-plat approval by the county board. Members of Save Lantern Bay were also present at this final-plat-approval hearing, which included an opportunity for public comment. They stated that they disagreed with the PC's decision not to apply the current ordinance. The PC responded that its policy remained the same: to apply the ordinance as it existed when the preliminary-plat process began.

On May 6, 2003, fourteen days after the meeting, Save Lantern Bay appealed the PC's decision in Cass County District Court, pursuant to section 10.02 of the Subdivision and Platting Ordinance:

> The decision of the Planning Commission shall not be final. Any person having an interest affected by the decision, has the right to appeal to District Court on questions of law and fact within fifteen (15) calendar days from the date of the meeting at which the decision was rendered.

Cass County, Minn., Subdivision and Platting Ordinance § 10.02 (2003). On competing motions for summary judgment by Save Lantern Bay and Thousand Acres

(which had intervened as a co-defendant in the action), the district court granted summary judgment to Thousand Acres, stating that Save Lantern Bay had failed to appeal in a timely manner. In its order, the district court characterized Save Lantern Bay's action as an appeal of the March 25 preliminary-plat approval rather than an appeal from the final-plat approval of April 22, even though Save Lantern Bay's complaint referred to the latter hearing.

In addition to its ruling on this threshold issue, the district court went on to reject Save Lantern Bay's argument that the PC lacked a rational basis to approve the plat, rejected Thousand Acres's cross-claim that the sixty-day rule of Minn.Stat. § 15.99 (2002) had automatically effected approval of the plat, and ruled that Cass County would be equitably estopped from revoking the plat approval. Although the district court's rejection of the application of the sixty-day rule under Minn.Stat. § 15.99 responded to Thousand Acres' mandamus action and was therefore not extinguished by the summary judgment, Thousand Acres does not appeal the district court's judgment on this issue. Save Lantern Bay appeals the remainder of the district court's judgment.

## ISSUES

I. Did the district court err in granting summary judgment on the basis that Save Lantern Bay had failed to appeal the decision of the Cass County Planning Commission in a timely manner?

II. Did the district court err in its judgment that Cass County was equitably estopped from revoking the final-plat approval?

## ANALYSIS

### I

Appellate review of a district court's grant of summary judgment considers two basic questions: whether there are unresolved issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The district court's grant of summary judgment in this case was based on its interpretation of the appeals provision of the county ordinance in the context of undisputed facts and thus is a legal conclusion, which we review de novo. *Farmington Township v. High Plains Coop.*, 460 N.W.2d 56, 58 (Minn. App.1990).

Save Lantern Bay argues that the district court erred in its interpretation of the appeals provision of the Cass County Subdivision and Platting Ordinance. In addition to establishing minimum standards for land subdivision and platting, the ordinance provides the procedures by which various government entities approve development plans, including preliminary-plat *and* final-plat approval. Cass County, Minn., Subdivision and Platting Ordinance arts. 4, 7 (2003). Section 10.02 provides specifically for the appeal of a "decision" of the Cass County Planning Commission within fifteen days after the date of the meeting at which the decision was rendered. The district court interpreted "decision" in this context to be limited to the PC's *preliminary*-plat approval under section 4.06 of the ordinance, despite the fact that section 7.04.03 of the ordinance also requires the PC's approval of the *final* plat.

Fundamental to our construction of an ordinance is the rule that it "should be construed in accordance with the plain and ordinary meaning of its terms." *Mohler v. City of St. Louis Park*, 643 N.W.2d 623, 634 (Minn.App.2002). When the language of an ordinance is not ambiguous, we need not attempt to examine the legislative intent of the promulgating entity. *Id.* The ordinance specifically provides that

"[t]he decision of the Planning Commission shall not be final" and provides for its appeal to the district court. Cass County, Minn., Subdivision and Platting Ordinance § 10.02 (2003).

■ We perceive no ambiguity in this language. We need go no further than to take notice that a governmental entity that is required by an ordinance to approve a final plat is also required to make a decision. Section 7.04.03 of the ordinance provides that "[n]o final plat shall be approved by the County Board of Commissioners without first receiving *approval of the PC.*" (Emphasis added.) Following public comment at the April 22, 2003 hearing, the PC voted unanimously to approve the final plat. The plain meaning of the ordinance requires our interpretation that persons having an interest affected by the PC's decision can appeal either preliminary or final plat decisions.

Respondents' reliance on *Semler Constr., Inc. v. City of Hanover,* 667 N.W.2d 457 (Minn.App.2003) is unavailing and ultimately works against them with respect to the timing issue. While the *Semler* court explained in detail the superior "importance" of preliminary-plat decisions as compared to the "mechanical" nature of final-plat approval, it did not strip final-plat decisions of all meaning. *Id.* at 461–63; *see also* Minn.Stat. § 462.358, subd. 3b (2002) (requiring final approval when "the applicant has complied with all conditions and requirements ... upon which the preliminary approval is expressly conditioned"). Final-plat decisions are still subject to review for mistake or abuse of discretion; indeed, the *Semler* court was considering a case procedurally similar to this one: an appeal of a municipality's decision on an application for final-plat approval. *Semler,* 667 N.W.2d at 460. We cannot imagine that Thousand Acres would dispute the existence of a right to appeal from the PC's final-plat approval if,

at the April 22, 2003 hearing, the PC had declined to pass the final plat along to the Cass County Board. We conclude that the ordinance plainly provides for appeal from the PC's action on the final plat. Because Save Lantern Bay appealed the PC's action within the permitted fifteen calendar days, its appeal was timely.

Our review of the district court's judgment does not, however, end here. The district court ruled in favor of Cass County and Thousand Acres on the timing issue. But the court, in the interests of justice, addressed the appeal on its merits and examined those issues that it would have reached had it found that Save Lantern Bay's appeal was timely. In this contingent analysis, the district court resolved three remaining issues by concluding that the PC had not abused its discretion by applying a repealed ordinance to the preliminary-plat approval; that the county would be equitably estopped from revoking the plat approval; and that the sixty-day rule of Minn.Stat. § 15.99 (2002) had not automatically effected approval of the plat.

■ By extending its analysis beyond the timeliness of the appeal to reach the merits, the district court made a conscientious effort to fully resolve the issues without additional proceedings in the district court. But the district court's analysis of the merits, entitled "Propriety of Final Plat Approval," did not, in fact, review the approval of the final plat but, instead, reviewed the approval of the preliminary plat. Consequently, the analysis on the merits is flawed. The timely appeal of the final plat approval permits review of that approval, but it does not provide a conduit to review the unappealed preliminary-plat approval after the appeal period has expired.

A brief overview of the Cass County Subdivision and Platting Ordinance establishes that the planning commission's pur-

pose in approving a preliminary plat is distinct from its purpose in approving a final plat; correspondingly, the appeal from each of these decisions is distinct. When an affected person appeals from a preliminary plat decision by the PC, that appeal is circumscribed by section 2.44 and article 4 of the ordinance, which define "preliminary plat" and outline the PC's procedures for approval or disapproval. That definition is "[a] tentative drawing or map of a proposed subdivision meeting the requirements ... enumerated." Cass County, Minn., Subdivision and Platting Ordinance § 2.44 (2003). Thus, an appeal of the PC's decision on a preliminary plat focuses on an evaluation of the preliminary plat measured against the minimum design standards outlined in article 5 of the ordinance.

An appeal from a final-plat decision by the PC, on the other hand, is evaluated with reference to the language of section 2.27 and article 7 of the ordinance governing final plats. The ordinance defines "final plat" as "[a] drawing or map of a subdivision showing the official plat to be filed in the office of the County Recorder." *Id.*, § 2.27 (2003). Section 7.04.03 requires that no final plat be approved by the county board "without first receiving approval of the PC certifying that the improvements described herein together with the agreements and documents required under this Article of the Ordinance meets the requirements of the County." An appeal of the PC's decision on a final plat thus examines the final plat against the standards of section 7.04 in particular and article 7 as a whole. In other words, final-plat approval by the PC *is not concerned with the minimum design standards of article 5.* As applied to Thousand Acres' development, this means that the issue of common-access lot size was not an issue decided by the final-plat approval and, consequently, not an issue that could be raised in an appeal of that approval.

This view of the plat-approval process comports with our previous decision in *Semler. See* 667 N.W.2d at 463 (stating that "once the conditions and requirements [of the preliminary plat] are satisfied, the plat mechanically receives final approval"). *Semler* is distinguishable in that it involves plat approval by a municipal rather than a county board (which is governed by a separate statute); and the two-step approval process in *Semler* does not feature the intermediate final-plat approval required of the PC in Cass County. *Id.* at 461. But it is parallel in its comparison of preliminary-plat and final-plat approval and in reinforcing the relationship between preliminary-plat and final-plat approval in the Cass County ordinance: preliminary-plat approval is "the most important step in obtaining approval of the subdivision." *Id.* At some point following the grant of preliminary-plat approval—Cass County has chosen an interval of fifteen days—a developer must be allowed to safely proceed with the infrastructural improvements necessary to secure final-plat approval.

Because the district court exceeded the scope of review from the appeal of final-plat approval by reviewing issues that were decided in the preliminary-plat approval, we reverse and remand for proper consideration of the appeal of the final-plat approval. The ordinance, as amended, has not changed the manner by which the PC executes final-plat approval. It is therefore beyond the issues properly raised in this appeal to determine whether a county has the unbounded discretion to suspend the operation of its existing ordinance and instead apply the provisions of its repealed ordinance, which was in effect when the original application for plat approval was made.

## II

In the district court action, Thousand Acres asserted a cross-claim of estoppel

against Cass County as a separate basis for protecting its final-plat approval. The district court found that Thousand Acres had acquired a vested right in the preliminary plat and that Cass County would be equitably estopped from revoking the final-plat approval. The district court predicated the estoppel on the statements of the Cass County Environmental Services Director to Thousand Acres expressing the county's intention to disregard any amendments to the ordinance in reviewing the plat of the Woman Lake parcel.

■■■ The general rule for establishing equitable estoppel is that a plaintiff must demonstrate inducement to rely, in good faith, on language or conduct resulting in injury, detriment, or prejudice. *Ridgewood Dev. Co. v. State*, 294 N.W.2d 288, 292 (Minn.1980). Applied to the specific circumstances of this case:

> A local government exercising its zoning powers will be estopped when a property owner, (1) relying in good faith (2) upon some act or omission of the government, (3) has made such a substantial change in position or incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the rights which he ostensibly had acquired.

*Id.* (emphasis omitted) (quotation omitted). To establish the existence of "extensive obligations and expenditures," the property owner "must demonstrate expenditures that are unique to the proposed project and would not be otherwise usable." *Id.* When estoppel is asserted against a government agency, "the equities of the circumstances must be examined and the government estopped if justice so requires, weighing in that determination the public interest frustrated by the estoppel." *Mesaba Aviation Div. of Halvorson of Duluth v. County of Itasca*, 258 N.W.2d 877, 880 (Minn.1977).

■■■ Thousand Acres has failed to establish an element necessary to a finding of equitable estoppel because it has not shown that its expenditures on the Woman Lake parcel were unique or otherwise unusable, or that whatever rights it may have acquired would be destroyed by a revocation of the final-plat approval. The record indicates that, if the preliminary-plat approval had been revoked and subsequent review performed under the 2003 ordinance, some alteration of the layout of the plat would likely have been necessary, but certainly no fundamental, inequitable change to the subdivision. Consequently, we reject the district court's determination that Cass County was equitably estopped from revoking its final-plat approval.

On remand the district court is limited to a determination on Save Lantern Bay's appeal of the PC's approval of Thousand Acre's final plat. Because the appeal period for the approval of the preliminary plat has expired and because the approval process for the preliminary plat applied the standards imposed by the repealed, rather than the effective ordinance, the estoppel claim as stated has no factual basis; the county has fully complied with the alleged inducement.

**DECISION**

The district court erred in granting summary judgment based on its interpretation of the appeals provision of section 10.02 of the Cass County Subdivision and Platting Ordinance. The district court also erred in its judgment that Cass County was equitably estopped from revoking final-plat approval.

**Reversed and remanded.**