**BIRCH PUBLICATIONS, INC.,**
et al., Respondents,

v.

**RMZ OF ST. CLOUD, INC., f/k/a**
Quest Publications, Inc., et
al., Appellants.

No. A03–1913.

Court of Appeals of Minnesota.

July 27, 2004.

Thomas P. Melloy, Gray, Plant, Mooty, Mooty & Bennett, P.A., St. Cloud, MN, for respondents.

Michael C. Rajkowski, Krista L. Durrwachter, Quinlivan & Hughes, P.A., St. Cloud, MN for appellants.

Considered and decided by WILLIS, Presiding Judge; LANSING, Judge; and HUDSON, Judge.

## OPINION

HUDSON, Judge.

In this appeal, appellants RMZ of St. Cloud, Inc., argue that the trial court erred in finding that RMZ abandoned a trademark and is therefore estopped from denying the transfer of the trademark to respondents Birch Publications, Inc. Because the trial court's factual findings were not clearly erroneous, and the trial court did not err as a matter of law in concluding that RMZ abandoned use of the trademark, we conclude that RMZ is estopped from denying the transfer of the trademark to Birch, and we affirm.

## FACTS

Ruth Zulkosky and three others organized appellants RMZ of St. Cloud, Inc.[1] (RMZ), in late 1998 to publish a business-telephone and internet directory. RMZ published a telephone directory known as "The MIDbook" in 1999 and 2000.

RMZ experienced financial difficulties, and in July 2000, Zulkosky asked Harold Anderson for financial help, and Anderson agreed to help. In order to publish a directory in 2001 and to provide a vehicle through which Anderson could provide financial assistance, Anderson created respondent Birch Publications, Inc. (Birch). Between August 30, 2000, when Birch was incorporated, and September 15, 2000,

---

1. At the time it was formed, RMZ of St. Cloud, Inc., was known as Quest Publications, Inc. The name change from Quest Publications to RMZ of St. Cloud, Inc., was the subject of other litigation, which has no bearing on this case. For clarity, we refer to appellants as RMZ throughout this opinion.

Anderson provided significant financial assistance to RMZ, including cash-flow funding and equity contributions. Anderson also invested cash in Birch to fund its initial business operations, and Birch purchased some of RMZ's assets, which was memorialized in a bill of sale. The bill of sale does not mention a purchase of all assets or a separate sale of the trademark name "The MIDbook." In the fall of 2000, Birch took over the RMZ office lease and hired several RMZ employees, including Zulkosky, who was given principal responsibility for the day-to-day operations of the Birch business.

On September 20, 2000, RMZ filed a certificate of assumed name for "The MIDbook" with the Minnesota Secretary of State. The certificate was published in the St. Cloud Times on November 2, 2000. On November 10, 2000, Birch filed a certificate of assumed name for "The MIDbook" with the Minnesota Secretary of State. Birch published the certificate in the St. Cloud Times on April 27, 2001.

A Birch employee testified that Birch and RMZ had discussions regarding RMZ's inability to satisfy various debts, including debts to the Internal Revenue Service. Birch and RMZ sought to find a way to get RMZ money to satisfy the debts without using RMZ's earned income. The discussions included reducing the commissions paid to Zulkosky and a possible sale of the trademark name "The MIDbook." An attorney for RMZ prepared an assignment of the trademark name, but the discussions broke down before the assignment occurred.

On March 2, 2001, Zulkosky drafted a letter to the Yellow Pages Publishers Association (YPPA), which stated that "[t]he Corporation that presently owns the MIDbook directory has changed effective October 1, 2000, from Quest [RMZ] ... to Birch Publications." RMZ contends that the letter was written so Birch could have permission to publish the 2001 directory, and Zulkosky testified she should have said Birch had permission to use the name rather than stating that the ownership had changed.

In September 2002, Birch underwent a staff reorganization and terminated several of their employees, including Zulkosky. On October 3, 2002, Zulkosky sent a letter to Birch's CEO, Beverly Berg, which stated that RMZ was withdrawing its permission to use the "MIDbook" name. Birch contends that both RMZ and Birch began to sell advertising for a directory in the late fall of 2002 using the "MIDbook" name.

In November 2002, Birch and Anderson commenced an action against RMZ and Zulkosky, seeking a temporary and permanent injunction to prevent RMZ from using the trademark or trade name "MIDbook" in any business related to the publication of a business-telephone directory. Birch also sought monetary damages on promissory notes. RMZ filed an amended answer and a counterclaim seeking injunctive relief prohibiting Birch from using the name "MIDbook." On December 9, 2002, after a hearing, the district court entered a temporary injunction prohibiting RMZ and Zulkosky from using the MIDbook name for publication of a directory in 2003. Prior to trial, the parties resolved the economic issues related to the promissory notes and other debts. On November 12, 2003, the trial court entered a permanent injunction prohibiting RMZ and Zulkosky from using the name "MIDbook" or any similar name or logo in connection with the publication of a business-telephone directory. The trial court found that RMZ negligently abandoned "The MIDbook" trademark and was therefore estopped from denying the transfer of the trademark to Birch. Appellants filed this appeal.

## ISSUES

I. Did the trial court err in finding RMZ abandoned the MIDbook trademark?

II. Did the trial court err in finding RMZ and Zulkosky are estopped from denying the transfer of the MIDbook name to Birch?

## ANALYSIS

On appeal from a bench trial, this court's scope of review is limited to determining whether the trial court's findings are "clearly erroneous and whether the court erred as a matter of law." *Powell v. MVE Holdings, Inc.*, 626 N.W.2d 451, 457 (Minn.App.2001), *review denied* (Minn. Jul. 24, 2001). This court must give due regard to the opportunity of the trial judge to determine the credibility of the witnesses. Minn. R. Civ. P. 52.01. A trial court's findings of fact will be reversed only if this court is left with a definite and firm conviction that the trial court has made a mistake. *Gjovik v. Strope*, 401 N.W.2d 664, 667 (Minn.1987). This court exercises independent judgment on purely legal questions. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

### I

The trial court found that RMZ abandoned the use of the trademark to Birch, but RMZ contends that it did not abandon the MIDbook trademark because Birch did not establish that RMZ intended not to resume the use of the trademark. Birch contends that the trial court correctly found that RMZ abandoned the use of the trademark to Birch. Birch notes it hired Zulkosky, and there is no evidence that she was acting in any capacity other than as a director or employee of Birch. Birch

further contends that RMZ abandoned the MIDbook trademark through non-use and declared its intention not to resume use through various actions and statements, such as Zulkosky's letter to the YPPA.

■■■ Under the Lanham Trademark Act, a trademark is abandoned when "its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127 (2002).[2] A party claiming that a trademark has been abandoned must show "non-use of the name by the legal owner and no intent by that person or entity to resume use in the reasonably foreseeable future." *Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 535 (4th Cir. 2000). Mere non-use is not prima facie evidence of abandonment unless the trademark has not been used for three consecutive years. *See* 15 U.S.C. § 1127. Having " 'intent to resume' requires the trademark owner to have plans to resume commercial use of the trademark." *Hiland Potato Chip Co. v. Culbro Snack Foods, Inc.*, 720 F.2d 981, 984 (8th Cir.1983) (quoting *Exxon Corp. v. Humble Exploration Co., Inc.*, 695 F.2d 96, 102–03 (5th Cir.1983)). The Lanham Trademark Act does not permit a license for a trademark owner to merely have "an intent not to abandon," which would allow a trademark owner to protect a trademark with neither commercial use nor plans to resume commercial use. *Id.*

■■ Here, the record shows that Zulkosky and RMZ ceased producing directories and RMZ ceased being a viable business sometime in 2001; thus, Zulkosky and RMZ ceased using the trademark in a commercial manner (i.e., to sell directories). Likewise, nothing in the record indicates that they had immediate plans to resume commercial use of the trademark. In addition, RMZ allowed Birch to publicly

---

**2.** The relevant Minnesota statute, Minn.Stat. §§ 333.18–.31 (2002), is patterned closely after the Lanham Trademark Act. *See Imported*

*Auto Parts Corp. v. R.B. Shaller & Sons*, 258 N.W.2d 797, 801 (Minn.1977).

assume use of the trademark to sell directories, and Zulkosky voiced no objection when Birch filed its assumed name registration with the Minnesota Secretary of State and then published notice of that filing in the St. Cloud Times. Zulkosky even wrote a letter to the YPPA, which stated that "[t]he Corporation that presently owns the MIDbook Directory has changed effective October 1, 2000, from Quest [RMZ] to Birch Publications." Zulkosky testified that she should have said Birch had permission to use the name, and claimed that the YPPA told her if she did not state that ownership had changed she would have to "reregister and apply for a new name, a new directory code and PUB code, which is all part of a directory name."

Although Zulkosky claims now that Birch merely had permission to use the name, we cannot ignore the fact that Zulkosky chose to write the letter in a manner that clearly states that the corporation that "owns" the MIDbook directory has changed. Moreover, even if the YPPA suggested that Zulkosky use the ownership language in the letter, as Zulkosky claims, she did not inform Birch that the letter she wrote to the YPPA merely gave Birch permission to use the trademark; nor did she give Birch written permission to use the trademark. Zulkosky's silence is telling.

■ Zulkosky also asserts that she hoped to revive RMZ as a viable business at some later date, but her stated hope is weak evidence of intent not to abandon. The owner of a trademark cannot defeat an abandonment claim by asserting a vague, subjective intent to resume use of a trademark at some unspecified future date. *See Silverman v. C.B.S., Inc.,* 870 F.2d 40, 47 (2nd Cir.1989). The actual conduct of the parties suggests that Zulkosky had no immediate intention to revive RMZ. Rather, it appears the parties intended for Zul-

kosky to have a management role in Birch and that she would have the opportunity to acquire an ownership interest in Birch. As the trial court noted, "[T]he new entity was producing the same product, under the same manager, but with Mr. Anderson being the majority shareholder." The trial court correctly concluded that Zulkosky "was using the trademark every day in her role at Birch, but RMZ Publications was no longer using [the trademark]."

We conclude that the trial court's findings were not clearly erroneous and that the trial court did not err as a matter of law in concluding that RMZ abandoned use of the trademark.

## II

RMZ further argues that the trial court erred by finding that RMZ negligently abandoned the MIDbook trademark name and was estopped from denying the transfer of the trademark to Birch. RMZ contends that the trial court failed to consider all of the evidence presented at trial and instead relied solely on the letter Zulkosky wrote to the YPPA. Birch contends that the trial court correctly found that the conduct of the parties supports the estoppel claim. In support of its position, Birch notes that it reasonably relied on the words, actions, and silence of Zulkosky and contends that it acquired RMZ's business and the MIDbook name.

■ A party seeking to invoke the doctrine of equitable estoppel has the burden of proving three elements: (1) that the promise or inducement was made; (2) that it has reasonably relied upon the promise; and (3) that it will be harmed if estoppel is not applied. *Hydra–Mac, Inc. v. Onan Corp.,* 450 N.W.2d 913, 919 (Minn.1990). An equitable-estoppel claim arises when one by his acts or representations, or by his silence when he ought to speak, intentionally or through culpable negligence, induces another to believe certain

facts to exist, and such other rightfully acts on the belief so induced in such manner that if the former is permitted to deny the existence of such facts it will prejudice the latter.

*Transamerica Ins. Group v. Paul*, 267 N.W.2d 180, 183 (Minn.1978) (quotations omitted). A plaintiff may establish an estoppel claim by showing that the defendant "through his language or conduct, induced the plaintiff to rely, in good faith, on this language or conduct to his injury, detriment or prejudice." *Semler Const., Inc. v. City of Hanover*, 667 N.W.2d 457, 466 (Minn.App.2003), *review denied* (Minn. Oct. 29, 2003) (citation omitted).

Here, there is considerable evidence that Zulkosky's conduct, words, and silence when she should have spoken, induced Anderson and Birch to make a substantial investment of time and money to create a viable business using the MIDbook name. First, Anderson created Birch to keep the underlying business of RMZ alive using the MIDbook name. Anderson invested thousands of dollars to create Birch, buy RMZ's office equipment, take over RMZ's lease, hire RMZ employees, and fund Birch's cash shortfalls. Second, Anderson rejected Zulkosky's proposal that he buy an interest in RMZ. Anderson's assistant participated in the initial meetings between Zulkosky and Anderson, and she testified that Anderson would only help RMZ by creating "a new company using the MIDbook name." Third, Zulkosky voiced no objection when Birch filed its assumed-name registration with the Minnesota Secretary of State and then published notice of that filing in the St. Cloud Times. Finally, Zulkosky wrote the letter to the YPPA, which stated that "[t]he Corporation that presently owns the MIDbook directory has changed effective October 1, 2000, from Quest [RMZ] to Birch Publications." The trial court was correct when it noted "[t]hat letter does not discuss that the trademark was by permission or by license, but was now owned by Birch." Based on all of the above, the first element of equitable estoppel has been satisfied because Zulkosky's conduct, words, and silence when she should have spoken induced Anderson and Birch to make a substantial investment of time and money to create a viable business using the MIDbook name.

Based on the facts described above, the trial court properly concluded that Anderson and Birch reasonably, and in good faith, relied on Zulkosky's conduct, words, and silence when she should have spoken. As the trial court correctly noted "Anderson clearly relied both upon [Zulkosky's] presence and the trademark use when making his investment in Birch. Officers of Plaintiff Birch Publications relied upon this continuing belief when pouring business efforts and goodwill into the trademark." Accordingly, the second element of equitable estoppel has been satisfied because Birch reasonably, and in good faith, relied on Zulkosky's inducement.

Finally, Birch and Anderson will be harmed if Birch loses the opportunity to continue to use the name MIDbook in the operation of the business. Birch believed that they had full ownership of the name MIDbook for two years, and during that time Birch added value to, commercially used, and poured business efforts and goodwill into the trademark.

### DECISION

The trial court's findings were not clearly erroneous, and the trial court did not err as a matter of law in concluding that RMZ abandoned use of the trademark and that RMZ is estopped from denying the transfer of the trademark to Birch.

**Affirmed.**