THIS OPINION IS A
PRECEDENT OF THE TTAB

Hearing: July 31, 2019                              Mailed: October 1, 2019

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

*Double Coin Holdings Ltd.*
*v.*
*Tru Development*
_____

Cancellation No. 92063808
_____

Joseph E. Mueth of Joseph E. Mueth Law Corporation
     for Double Coin Holdings Ltd.

Rishi Nair and Kevin J. Keener of Keener & Associates, P.C.
     for Tru Development.

_____

Before Peter, Deputy Under Secretary of Commerce for Intellectual Property and
Deputy Director of the United States Patent and Trademark Office, and Larkin and
Hudis, Administrative Trademark Judges.

Opinion by Hudis, Administrative Trademark Judge:

Respondent, Tru Development ("Tru"), owns the trademark registration on the

Principal Register for the mark ROAD WARRIOR, in standard characters, for "tires"

in International Class 12.[1] Petitioner, Double Coin Holdings Ltd. ("Double Coin"), seeks cancellation of Respondent's ROAD WARRIOR registration[2] under Trademark Act Section 2(d), 15 U.S.C. § 1052(d), on the basis of alleged priority and likelihood of confusion with its registered mark WARRIOR (Stylized) in the following format:

for "casings for pneumatic tires; inner tubes for pneumatic tires; inner tubes for bicycles; tire flaps; vehicle wheel tires; automobile tires; tires for vehicle wheels; cycle tires; solid tires for vehicle wheels" in International Class 12.[3] Double Coin further seeks cancellation under Trademark Act Section 2(d) on the basis of alleged priority and likelihood of confusion with its common law mark WARRIOR for tires.

In its First Amended Answer,[4] Tru denies the salient allegations in the Petition for Cancellation and asserts a counterclaim for cancellation of the WARRIOR

---

[1] U.S. Registration No. 4805521, issued on September 1, 2015, under Trademark Act Section 1(a), 15 U.S.C. § 1051(a), alleging January 2015 as the date of first use of the mark and first use of the mark in commerce. The underlying application for this registration was filed on November 13, 2014.

[2] Petition for Cancellation, 1 TTABVUE. References to the pleadings, the evidence of record and the parties' briefs refer to the Board's TTABVUE docket system. Coming before the designation TTABVUE is the docket entry number; and coming after this designation are the paragraph or page references, as applicable.

[3] U.S. Registration No. 3335545, issued on November 13, 2007, under Trademark Act Section 66(a), 15 U.S.C. § 1141f(a), based on International Registration No. 0908144, issued on October 8, 2006. The effective filing date for the underlying application to the U.S. registration is thus October 8, 2006.

[4] 22 TTABVUE.

(Stylized) registration on the ground that Double Coin has abandoned the mark within the meaning of Trademark Act Section 45, 15 U.S.C. § 1127, either by explicitly abandoning it or by discontinuing use of the mark with the intent not to resume use. Within its First Amended Answer, Tru also asserts numerous affirmative defenses, most of which are simply amplifications of its denials of Double Coin's priority and likelihood of confusion claim, or amplifications of Tru's abandonment counterclaim.

The only cognizable affirmative defenses Tru asserts are for laches, estoppel, waiver, unclean hands and acquiescence. Of these defenses, the only one pursued in Tru's Trial Brief is laches. Therefore, this is the only affirmative defense we shall consider; Tru's other defenses having been waived.[5]

In its Answer to the counterclaim asserted in Tru's First Amended Answer,[6] Double Coin asserts that it has priority due to the issue date of its registration; that the counterclaim fails to state a claim upon which relief may be granted; that Tru has no standing to assert or maintain the counterclaim; and that the counterclaim is barred by the defenses of laches, acquiescence, and unclean hands.

---

[5] *TPI Holdings, Inc. v. TrailerTrader.com LLC,* 126 USPQ2d 1409, 1413 n.28 (TTAB 2018) ("Respondent also asserted 'estoppel, acquiescence and waiver,' but does not argue any of these in its brief. They are therefore waived.")

[6] 25 TTABVUE.

The first asserted defense is simply an amplification of Double Coin's priority and likelihood of confusion claim. Double Coin did not pursue any of its other asserted affirmative defenses in its Trial Brief or on motion. These defenses, therefore, have been waived.[7]

Both parties filed trial evidence and briefs,[8] and their counsel appeared at an oral hearing before the panel. We find that Double Coin met its burden of proof regarding its petition to cancel Tru's ROAD WARRIOR registration on the basis of priority and likelihood of confusion; and that Tru did not meet its burden of proof regarding its affirmative defense of laches. We therefore **grant** the petition to cancel. We further find that Tru did not meet its burden of proof regarding its abandonment by non-use cancellation counterclaim. We therefore **deny** the cancellation counterclaim.

---

[7] *Cf. Harry Winston, Inc. v. Bruce Winston Gem Corp.*, 111 USPQ2d 1419, 1422 (TTAB 2014) ("Applicant stated affirmative defenses of failure to state a cause of action upon which relief may be granted and unclean hands. As applicant did not pursue the affirmative defenses of failure to state a claim and unclean hands, either in its brief or by motion, those defenses are waived.").

[8] Attached to Double Coin's Counterclaim Opposition and Rebuttal Trial Brief, 67 TTABVUE, are two Appendices summarizing decisions of other agencies of the Federal Government, and articles that were not made of record at trial. Exhibits and other evidentiary materials attached to a party's brief on the case can be given no consideration unless they were properly made of record during the time for taking testimony. *Syngenta Crop Protection Inc. v. Bio-Chek LLC*, 90 USPQ2d 1112, 1116 (TTAB 2009). We therefore have given the attached Appendices no consideration.

Tru's Rebuttal Trial Brief on its Counterclaim, 69 TTABVUE, was untimely filed. However, Tru submitted this Brief with a motion to reopen the time to submit its Rebuttal Brief, which Double Coin did not oppose. Therefore, we **grant** Tru's motion as conceded; and we have thus considered Tru's Rebuttal Trial Brief on its Counterclaim.

## I.    The Evidentiary Record

The record consists of the pleadings and, by operation of Trademark Rule 2.122(b)(1), 37 C.F.R. § 2.122(b)(1), the file of Double Coin's and Tru's involved registrations. In addition, the parties introduced the following evidence:[9]

### A. Double Coin's Testimony and Evidence

1. Declaration of Dean Jin, Double Coin's Export Manager, and an exhibit thereto, executed April 17, 2018 (33 TTABVUE) ("Jin Decl.").

2. Declaration of Zhi-Ming ("Mike") Yang, President of China Manufacturers Alliance, LLC ("CMA"), P's exclusive distributor in which Double Coin has a majority ownership interest, and exhibits thereto, executed April 17, 2018 (34 and 38 TTABVUE) ("Yang Decl.").

3. Declaration of Timothy Phillips, Vice President of Marketing and Operations of CMA, and exhibits thereto, executed April 16, 2018 (35 and 39 TTABVUE) ("Phillips Decl.").

4. Declaration of Aaron Murphy, former Vice President of CMA, and exhibits thereto, executed April 17, 2018 (36 TTABVUE) ("Murphy Decl.").

5. Declaration of Joseph Mueth, Double Coin's counsel, and exhibits thereto, executed May 17, 2018 (40 TTABVUE) ("Mueth Decl.").

6. Double Coin's Notice of Reliance and exhibits thereto (comprising copies of and USPTO database information for the parties' registrations, various website materials, videos of online and television media commercials, and certain of Tru's discovery responses) (41 TTABVUE) ("PNOR").

7. Cross-Examination and Confidential Cross-Examination Testimony of David Abotbool, Tru's President, and exhibits thereto, taken August 24, 2018 (55-57 TTABVUE); ("Abotbool Cross-Exam Tr.").

8. Rebuttal Declaration and Report of Rosemary Coates, and exhibits thereto,[10] executed October 30, 2018 (part of 58 TTABVUE) ("Coates Rebuttal Decl.").

---

[9] All Declaration evidence submitted by the parties shall be cited below by paragraph and exhibit numbers.

[10] Double Coin submitted Ms. Coates' Declaration to provide "expert analysis, and opinions concerning industry customs and practice in connection with the purchase of products

9. Rebuttal Declaration of Zhi-Ming ("Mike") Yang, and exhibit thereto, executed October 29, 2018 (part of 58 TTABVUE) ("Yang Rebuttal Decl.").

10. Rebuttal Declaration of Dean Jin, and exhibits thereto, executed October 22, 2018 (part of 58 TTABVUE) ("Jin Rebuttal Decl.").

11. First Rebuttal Declaration Timothy Phillips, executed on October 24, 2018 (part of 59 TTABVUE) ("Phillips First Rebuttal Decl.").

12. Second/1 Rebuttal Declaration of Timothy Phillips, and exhibits thereto, executed October 24, 2018 (part of 59 TTABVUE) ("Phillips Second/1 Rebuttal Decl.").

13. Second/2 and Confidential Rebuttal Declaration of Timothy Phillips, and exhibits thereto, executed October 24, 2018 (60 TTABVUE) ("Phillips Second/2 Rebuttal Decl.").

14. Double Coin's Rebuttal Notice of Reliance and exhibits thereto (comprising copies various website materials) (61 TTABVUE) ("P Rebuttal NOR").

### B. Tru's Evidence

1. Tru's Notice of Reliance and exhibits thereto (comprising a picture of Tru's product bearing the ROAD WARRIOR mark and copies of various website materials) (45 TTABVUE) ("DNOR").

2. Declaration of David Abotbool, Tru's President, and exhibits thereto, executed July 5, 2018 (46 TTABVUE) ("Abotbool Decl.").

3. Confidential Declaration of David Abotbool, and exhibits thereto, executed July 5, 2018 (47 TTABVUE) ("Abotbool Confd'l Decl.").

4. Rebuttal Declaration of David Abotbool, executed December 14, 2018 (62 TTABVUE) ("Abotbool Rebuttal Decl.").

---

manufactured in China for sale in and shipment to the United States, and the use of trademarks in international commerce." (Coates Rebuttal Decl. ¶ 10).

### C. The Parties' Evidentiary Motions and Objections

#### 1. Sales Summaries and Testimony Based Thereon

Both parties made of record summary sales and/or marketing figures as partial support for a demonstration of use of the respective marks.[11] Each party seeks to exclude its adversary's summary figures, including all trial testimony based thereon, for failure to make available the underlying documents from which the summaries were derived pursuant to Fed.R.Evid. 1006.[12]

Having reviewed the record and the arguments of the parties, we find that each party proffering its summary figures did timely make available to its adversary the underlying documents for examination. However, in each instance, the adversary failed to avail itself of the opportunity to inspect and copy the documentation when offered.[13] Therefore, each party's motion or objection to its adversary's summary sales figures is **denied**.

#### 2. Double Coin's Objections to Portions of the Abotbool Declaration

Double Coin asserts objections to, and moves to strike, the following testimony proffered by Tru's President, David Abotbool, on the bases that Mr. Abotbool lacks

---

[11] For Double Coin, Yang Decl., Exh. 6; for Tru, Abotbool Confd'l Decl., Exh. 10.

[12] Tru's motion to strike, 43-44 TTABVUE. Evidentiary Objections in Appendix to Double Coin's Trial Brief, 63-64 TTABVUE.

[13] Mueth Decl. (Double Coin's Counsel) and exhibits thereto, 40 TTABVUE, and Double Coin's opposition to Tru's motion to strike, 49 TTABVUE. Appendix to Tru's Trial Brief, 65 TTABVUE, ¶ 1.

personal knowledge or provided insufficient foundation, or that it constitutes impermissible lay opinion testimony, pursuant to Fed.R.Evid. 602, 701(a) and 701(b):

**a)** ROAD WARRIOR is recognized by consumers as a superior brand of tires; Tru's customers know about ROAD WARRIOR tires and purchase them from Tru directly or through Tru's Amazon and eBay online sales platforms; and when Mr. Abotbool asks customers about WARRIOR tires, they are unaware of them and have never seen them before (Abotbool Decl., ¶¶ 17, 19, 20).

**b)** ROAD WARRIOR connotes imagery of the Mel Gibson "Road Warrior" movies, powerful, masculine, combative; ROAD WARRIOR stands out to consumers; there is no likelihood of confusion between WARRIOR tires and ROAD WARRIOR tires due to the way the marks and associated goods are used in commerce; Double Coin's tires are not well known or recognized, have not been present or sold in the US for a period greater than three years (Abotbool Decl., ¶¶ 30-33).

**c)** If a tire sticker is garbled or partially visible, it is not something a customer will note; and the tire stickers are only one facet of display for the ROAD WARRIOR mark (Abotbool Rebuttal Decl., ¶¶ 5-6).

**d)** No confusion exists between ROAD WARRIOR and WARRIOR tires. Not one instance of confusion has ever been brought to Mr. Abotbool's attention nor has anyone even mentioned WARRIOR tires to him (Abotbool Rebuttal Decl., ¶ 7).

The above objections are well taken, *see Kohler Co. v. Honda Giken Kogyo K.K.*, 125 USPQ2d 1468, 1482-83 (TTAB 2017), and the described declaration testimony of Mr. Abotbool shall be given no consideration, with the following exceptions:

**1)** Tru's customers purchase ROAD WARRIOR tires from Tru directly or through Tru's Amazon and eBay online sales platforms (Abotbool Decl., ¶ 19).

**2)** Tru's tires are primarily sold online and therefore the ROAD WARRIOR Mark exists on the product sales page and throughout the listing; and tire stickers are only one facet of display for the ROAD WARRIOR mark, and there are other ways that Tru displays the mark in the marketplace (Abotbool Rebuttal Decl., ¶¶ 5-6).

**3)** No instances of confusion have been brought to Mr. Abotbool's attention nor has anyone even mentioned WARRIOR tires to him (Abotbool Rebuttal Decl., ¶ 7).

To the extent the parties have raised any further evidentiary objections, they are **overruled**. Suffice it to say, "the Board is capable of assessing the proper evidentiary weight to be accorded the testimony and evidence, taking into account the imperfections surrounding the admissibility of such testimony and evidence. Thus, we have considered the evidence, keeping in mind the objections, and have accorded whatever probative value the testimony and evidence merits." *United States Playing Card Co. v. Harbro, LLC*, 81 USPQ2d 1537, 1540 (TTAB 2006). *See also Grote Indus., Inc. v. Truck-Lite Co., LLC*, 126 USPQ2d 1197, 1200 (TTAB 2018) ("We also remind the parties that our proceedings are tried before judges not likely to be easily confused or prejudiced. Objections to trial testimony on bases more relevant to jury trials are particularly unnecessary in this forum.").

## II. Double Coin's Petition for Cancellation Based on Priority and Likelihood of Confusion

### A. Standing

A threshold issue in every inter partes case is the plaintiff's standing to challenge registration. *See Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014) *cert. denied*, 135 S. Ct. 1401 (2015); *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1025 (Fed. Cir. 1999). A cancellation petitioner may establish its standing by properly making of record its pleaded registration, if it is the basis for a likelihood of confusion claim that is not wholly

without merit. *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982). Here, Double Coin properly made of record its WARRIOR (Stylized) registration with its Notice of Reliance pursuant to Trademark Rule 2.122(d)(1); 37 C.F.R. § 2.122(d)(1).[14]

Double Coin also established its standing through the testimony, with related exhibits, of its witnesses who have averred that, with the exception of the period of April 2015 to April 2018,[15] Double Coin has imported into and sold WARRIOR branded tires in the United States since 2007, and that Tru's registration and use of the mark ROAD WARRIOR for tires in the United States will likely cause confusion.[16] This establishes that Double Coin possesses a real interest in the proceeding beyond that of a mere intermeddler, and has a reasonable basis for its belief of damage resulting from registration of the subject mark. *Ritchie*, 50 USPQ2d at 1025-26; *Ipco Corp. v. Blessings Corp.*, 5 USPQ2d 1974, 1976-77 (TTAB 1988).

## B. Priority

Merely because Double Coin properly submitted its WARRIOR (Stylized) registration into evidence does not mean that it has established priority on its likelihood of confusion claim. "In a cancellation proceeding such as this one where

---

[14] PNOR, Exh. B.

[15] This three-year non-use period is discussed in further detail below, regarding our consideration of Tru's abandonment counterclaim.

[16] Jin Decl., ¶¶ 6-7, 10-14, 18; Yang Decl. ¶¶ 7, 13-14, 19 and Exhs. 4-7; Phillips Decl., ¶¶ 4, 6-8 and Exhs. 4-9; Murphy Decl., ¶¶ 2, 4-6, 10-11 and Exhs. 1, 4-6.

both parties own registrations, priority is in issue." *Couch/Braunsdorf Affinity, Inc. v. 12 Interactive, LLC*, 110 USPQ2d 1458, 1474 (TTAB 2014). *See also Top Tobacco LP v. N. Atl. Operating Co.*, 101 USPQ2d 1163, 1169 (TTAB 2011) ("With respect to the petition to cancel North Atlantic's … mark, Top must prove that it has a priority interest in [its] mark … and that interest was obtained prior to either the filing date of North Atlantic's [underlying] application for registration or North Atlantic's date of first use.").

Here, the above-noted evidence establishing Double Coin's standing also demonstrates Double Coin's common law use in commerce of the WARRIOR mark (regardless of stylization) in connection with passenger and light truck tires: 1) since at least as early as the October 8, 2006 constructive use priority filing date of the application that matured into Double Coin's WARRIOR (Stylized) registration, 2) in the United States marketplace since 2007, or 3) since May 2014 as more particularly documented by Double Coin's sales documentation.[17] These dates are well before January 1, 2015, which Tru admits is the earliest that it sold any tires bearing the ROAD WARRIOR mark in the United States, or the earliest that it made media buys in the United States relating to ROAD WARRIOR tires.[18] Further, the November 13, 2014 constructive use filing date of the underlying application to Tru's ROAD

---

[17] Yang Decl., ¶ 18, Exh. 6.

[18] PNOR, Exhs. H and I.

WARRIOR registration is the earliest date on which Tru may rely for priority. Thus, Double Coin has established its priority in this proceeding.

### C. Likelihood of Confusion

Our determination under Trademark Act Section 2(d), 15 U.S.C. § 1052(d), is based on an analysis of all probative facts in evidence that are relevant to the factors bearing on the likelihood of confusion. *In re E. I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973); *see also In re Majestic Distilling Co.,* 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003). We determine likelihood of confusion on a case-by-case basis, aided by the application of the factors set out in *DuPont. See On-Line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 56 USPQ2d 1471, 1474 (Fed. Cir. 2000). "Not all of the *DuPont* factors are relevant to every case, and only factors of significance to the particular mark need be considered." *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *In re Mighty Leaf Tea*, 601 F.3d 1342, 1346 (Fed. Cir. 2010)). In any likelihood of confusion analysis, however, two key considerations are the similarities between the marks and the similarities between the goods. *See Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976) ("The fundamental inquiry mandated by § 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks."). Double Coin bears the burden of proving a likelihood of confusion by a preponderance of the evidence. *Weider Publn's, LLC v. D & D Beauty Care Co., LLC*, 109 USPQ2d 1347, 1353 (TTAB 2014).

### 1. The Parties' Goods and Channels of Trade

We initially turn to the comparison of the goods at issue, the second *DuPont* factor. In making our determination regarding the relatedness of the goods, we must look to the goods as identified in the parties' registrations. *See Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 110 USPQ2d 1157, 1162 (Fed. Cir. 2014) (quoting *Octocom Sys., Inc. v. Houston Comput. Servs. Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990) ("The authority is legion that the question of [the continued] registrability of … [a registrant]'s mark must be decided on the basis of the identification of goods set forth in the … [registration] regardless of what the record may reveal as to the particular nature of … [a registrant]'s goods, the particular channels of trade or the class of purchasers to which the sales of goods are directed.")).

The goods recited in Double Coin's WARRIOR (Stylized) registration are "casings for pneumatic tires; inner tubes for pneumatic tires; inner tubes for bicycles; tire flaps; vehicle wheel tires; automobile tires; tires for vehicle wheels; cycle tires; solid tires for vehicle wheels" in International Class 12. The goods recited in Tru's ROAD WARRIOR registration are "tires" in International Class 12. Tru argues that the parties' tires, as sold in the marketplace "are not even close to the same kind of good" and "do not serve the same purposes,"[19] but the "tires" identified in Tru's registration

---

[19] Tru's Brief, 65 TTABVUE 20. See also Abotbool Decl., ¶ 26; Abotbool Rebuttal Decl., ¶¶ 12-13

encompass, and thus are legally identical to, at least the "vehicle wheel tires," "automobile tires," and "tires for vehicle wheels" identified in Double Coin's registration. *See, e.g., In re Hughes Furniture Indus., Inc.*, 114 USPQ2d 1134, 1137 (TTAB 2015) ("Applicant's broadly worded identification of 'furniture' necessarily encompasses Registrant's narrowly identified 'residential and commercial furniture'").

We need not consider, however, whether each of Double Coin's recited goods is related to Tru's goods for purposes of a *DuPont* analysis, as it is sufficient if likelihood of confusion is found with respect to any product recited in Double Coin's registration. *See Tuxedo Monopoly, Inc. v. Gen. Mills Fun Grp.*, 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981); *Apple Comput. v. TVNET.Net, Inc.*, 90 USPQ2d 1393, 1397 (TTAB 2007). We find that the goods of the parties, at least in part, are identical.

As for channels of trade, the third *DuPont* factor, the legally identical goods in the parties' registrations are construed to include all goods of the type identified and "'[i]t is well established that absent restrictions in the application and registration, [identical] goods and services are presumed to travel in the same channels of trade to the same classes of purchasers.'" *Cai v. Diamond Hong*, 127 USPQ2d at 1801 (quoting *In re Viterra, Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012)).

Double Coin argues, with citations to the record, that the parties' classes of customers, in fact, are the same, vehicle owners, and that the parties also both sell

their respective tires to the general public.[20] Double Coin additionally submitted evidence that numerous third-party tire producers, such as Cooper, Dunlop/Rover, Firestone, Toyo, Uniroyal and Yokohama, promote both their passenger car and truck tires online under the same brand.[21] Tru did not submit any argument regarding the purported differences in the parties' trade channels. We find that the parties' goods are legally identical (at least in part), the trade channels and classes of consumers overlap, and that each of these factors weigh in favor of a likelihood of confusion.

### 2. The Parties' Marks

We next consider the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression, the first *DuPont* factor, 177 USPQ at 567. *See Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005). "The proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that persons who encounter the marks would be likely to assume a connection between

---

[20] Double Coin's Brief, 66-67 TTABVUE 24. *See also*, Yang Decl., ¶ 15; Phillips Decl. ¶¶ 3-4, Exhs. 1-3; Murphy Decl., ¶¶ 7, 11; PNOR Exhs. C-G, K, P; DNOR Exhs. 1-5, 7; Abotbool Decl., ¶¶ 6, 8-9, 14 Exhs. 1-5, 7; Abotbool Confd'l Decl., ¶¶ 6, 8-9, 12, 15 Exhs. 1-5, 7, 13, 14; Abotbool Cross-Exam Tr., pp. 19-24, 29-36, Exhs. C, E-I; Abotbool Confd'l Cross-Exam Tr., pp. 71-75, 77-81, Exhs. L; Jin Rebuttal Decl., ¶¶ 21-22; Phillips First Rebuttal Decl., ¶¶ 3-5; P Rebuttal NOR, Exhs. A-W.

[21] P Rebuttal NOR, Exhs. X-AAA.

the parties." *In re i.am.symbolic, llc*, 866 F.3d 1315, 123 USPQ2d 1744, 1748 (Fed. Cir. 2017). The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks. *In re Assoc. of the U.S. Army*, 85 USPQ2d 1264, 1268 (TTAB 2007). Moreover, "[w]hen trademarks would appear on substantially identical goods, 'the degree of similarity necessary to support a conclusion of likely confusion declines.'" *Coach Servs. Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012).

While there is no explicit rule that the marks are automatically similar because Tru's junior mark, ROAD WARRIOR, contains Double Coin's entire mark WARRIOR, "[l]ikelihood of confusion often has been found where the entirety of one mark is incorporated within another." *Hunter Indus., Inc. v. Toro Co.*, 110 USPQ2d 1651, 1660 (TTAB 2014) (Opposer's mark PRECISION DISTRIBUTION CONTROL contains the entirety of Applicant's mark PRECISION).

"It is axiomatic that a mark should not be dissected and considered piecemeal; rather, it must be considered as a whole in determining likelihood of confusion." *Franklin Mint Corp. v. Master Mfg. Co.*, 667 F.2d 1005, 212 USPQ 233, 234 (CCPA 1981). That said, different features may be analyzed to determine whether the parties' marks are confusingly similar. *In re Detroit Athletic Co.*, 903 F.3d 1297, 128 USPQ2d 1047, 1050 (Fed. Cir. 2018) (*citing In re Nat'l Data Corp.*, 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985) ("[I]n articulating reasons for reaching a conclusion on the issue of confusion, there is nothing improper in stating that, for

16

rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on consideration of the marks in their entireties.")).

Thus, notwithstanding Tru's arguments to the contrary,[22] we find that the presence in Tru's ROAD WARRIOR mark of the term "Road," which is weak as a source identifier in connection with tires, does not distinguish the parties' marks. In this connection, according to MERRIAM-WEBSTER online dictionary, https://www.merriam-webster.com/dictionary/road (last visited July 30, 2019), a "road" is "an open way for vehicles, persons, and animals especially: one lying outside of an urban district: highway."[23] At best, then, the term "Road" is highly suggestive of Tru's goods. See also Tru's advertising describing its ROAD WARRIOR tires as "suitable for all kinds of **roads**" and providing "good off **road** traction" PNOR, 41 TTABVUE 71, 73, 102-109 (Exh. G).

Consequently, if a junior user takes the entire mark of another and adds a generic, descriptive or highly suggestive term, it is generally not sufficient to avoid confusion.

---

[22] Tru's Brief, 65 TTABVUE 17-19. Further, aside from the unsupported Declaration of Tru's President Mr. Abotbool (Abotbool Decl., ¶ 30), the record is devoid of any evidence that Tru's ROAD WARRIOR mark is tied to the Mel Gibson movies "The Road Warrior" and "Mad Max2: The Road Warrior."

[23] The Board may take judicial notice of dictionary definitions, including online dictionaries that exist in printed format, definitions in technical dictionaries, translation dictionaries and online dictionaries. *See In re White Jasmine LLC*, 106 USPQ2d 1385, 1392 n.23 (TTAB 2013). The Board also may notice dictionary definitions sua sponte. *See University of Notre Dame du Lac v. J.C. Gourmet Food Imps. Co.*, 213 USPQ 594, 596 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

*See Stone Lion Capital Partners*, 110 USPQ2d at 1161 (Applicant's STONE LION mark for financial planning was confusingly similar to Opposer's LION CAPITAL mark for competitive services); *Bd. of Regents, Univ. of Tex. Sys. v. S. Ill. Miners, LLC*, 110 U.S.P.Q.2d 1182, 1189 TTAB 2014) ("Likelihood of confusion is often found where the entirety of one mark is incorporated within another." The mark MINERS, both alone and with image of a miner and the words "Southern Illinois," found confusingly similar to opposer's MINERS mark, both for college sports teams); *accord,* 4 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:50 (5th ed. 2019).

Here, ROAD WARRIOR looks, sounds, and conveys the impression of being a line extension of WARRIOR. *SquirtCo v. Tomy Corp.*, 697 F.2d 1038, 216 USPQ 937, 939 (Fed. Cir. 1983) ("Because of the alliteration with SQUIRT, SQUAD is an apt choice to combine with SQUIRT to suggest a line or group of toys from the same source as SQUIRT balloons. Thus, the marks do not create different commercial impressions.")

We find that parties' marks are similar in their entireties in terms of appearance, sound, connotation and overall commercial impression which, therefore, supports a finding of likelihood of confusion.

### 3. Degree of Purchasing Care – Customer Sophistication

The fourth *DuPont* factor is the "conditions under which and buyers to whom sales are made, i.e. 'impulse' v. 'careful', sophisticated purchasing." *DuPont*, 177 USPQ at 567. As noted earlier, the classes of purchasers for each parties' tires are the same.

Precedent requires that we base our decision on the least sophisticated potential purchasers. *Stone Lion Capital Partners*, 110 USPQ2d at 1163. Tru argues that purchasing customers (of at least its tires) are highly sophisticated, do not purchase Tru's goods on impulse, and undertake research into the goods prior to purchase.[24] Double Coin argues that purchasers (of at least its tires) are not likely to be sophisticated and are unlikely to make an informed judgment regarding their source.[25] Tru's support for its arguments are the mere lay assertions of its President, Mr. Abotbool, without any further evidence. Double Coin's arguments are without any evidentiary support.

Nonetheless, we cannot "disregard the broad scope of [goods] … recited in [the parties' registrations] …, and … instead rely on the parties' current [goods sold in the marketplace] …. This would be improper because the [goods] recited in the [registrations] … determine the scope of the[ir] post-grant benefit …." *Stone Lion Capital Partners*, 110 USPQ2d at 1162. Stated another way, we cannot resort to extrinsic evidence to restrict the nature or use of the tires sold by the parties under the registered marks. *See In re Bercut-Vandervoort & Co.*, 229 USPQ 763, 764 (TTAB 1986) (evidence that relevant goods are expensive wines sold to discriminating

---

[24] Tru's Brief, 65 TTABVUE 19 citing Abotbool Decl., ¶¶ 11-12.

[25] Double Coin's Brief, 63-64 TTABVUE 25-26.

purchasers must be disregarded given the absence of any such restrictions in the application or registration).

We must treat the parties' goods as including general-use tires, as well as specialized tires, and, therefore, presume that purchasers for the goods include ordinary consumers who may buy tires without exercising a high degree of care. *See Stone Lion Capital Partners*, 110 USPQ2d at 1163 ("when a buyer class is mixed, the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class" (quoting *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 293 (3d Cir. 1991)); *see also In re Sailerbrau Franz Sailer,* 23 USPQ2d 1719, 1720 (TTAB 1992) (finding that all purchasers of wine may not be discriminating because while some may have preferred brands, "there are just as likely to be purchasers who delight in trying new taste treats.").

Even if the parties' goods are not subject to impulse buying, absent evidence showing that consumers will exercise a higher than ordinary degree of purchasing care (and there is none in this record), we find this *DuPont* factor at best is neutral.

### 4. Absence of Actual Confusion

The seventh and eighth *DuPont* factors are "[t]he nature and extent of any actual confusion" and "[t]he length of time during and the conditions under which there has been concurrent use without evidence of actual confusion." *DuPont*, 177 USPQ at 567. Tru asserts that, during the time its ROAD WARRIOR tires have been sold in the

20

marketplace, there have been no reported instances of actual confusion.[26] Double Coin points to a Google® images search for ROAD WARRIOR TIRES, which called up images of both parties' ROAD WARRIOR and WARRIOR tires, as evidence of confusion.[27] Double Coin also points to Tru's YouTube commercials, its own product website, and images on third-party website presentations – in which the ROAD portion of the mark is either obscured or cut off – as additional evidence of actual confusion.[28]

However, without direct testimony from supposedly confused individuals (having viewed Double Coin's proffered evidence), there is insufficient evidence to ascertain what they were thinking, or whether they were actually confused. This is not evidence of actual confusion (a mistaken perception of a purchaser about the source or sponsorship of the goods), and is entitled to no weight. *Georgia-Pacific Corp. v. Great Plains Bag Co.*, 614 F.2d 757, 204 USPQ 697, 701 (CCPA 1980) ("Actual confusion is entitled to great weight but only if properly proven … Such is not the case here.").

At the same time, Tru's reliance on the lack of actual confusion is misplaced. "The absence of any reported instances of confusion is meaningful only if the record indicates appreciable and continuous use by [Tru] … of its mark for a significant

---

[26] Tru's Brief 65 TTABVUE 19-20; Abotbool Decl., ¶ 18; Abotbool Rebuttal Decl., ¶ 7.

[27] Double Coin's Brief 63-64 TTABVUE 26; PNOR Exh. L.

[28] Double Coin's Brief 63-64 TTABVUE 26-27; PNOR Exhs. K and P; P Rebuttal NOR Exhs. A-W; Phillips Decl., ¶ 4, Exh. 3; Phillips First Rebuttal Decl., ¶¶ 5-7; Abotbool Decl., Exh. 5.

period of time in the same markets as those served by [Double Coin] … under its mark[].” *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 94 USPQ2d 1645, 1660 (TTAB 2010), *aff'd*, 637 F.3d 1344, 98 USPQ2d 1253 (Fed. Cir. 2011). In other words, for the absence of actual confusion to be probative, there must have been a substantial opportunity for confusion to have occurred. *Barbara's Bakery Inc. v. Landesman,* 82 USPQ2d 1283, 1287 (TTAB 2007) (the probative value of the absence of actual confusion depends upon there being a significant opportunity for actual confusion to have occurred).

Here, Tru has only been using its mark in commerce since January 2015, a period during which, as discussed below, Double Coin had temporarily withdrawn from the United States market. There has thus been no meaningful opportunity for confusion to occur. We therefore find the absence of any actual confusion does not weigh in Tru's favor. *See Nina Ricci S.A.R.L. v. E.T.F. Enters. Inc.*, 889 F.2d 1070, 12 USPQ2d 1901, 1903 (Fed. Cir. 1989) (“The absence of any showing of actual confusion is of very little, if any, probative value” where evidence of as to the use of Applicant's merchandise during the time in question was not presented). In any event, “it is unnecessary to show actual confusion in establishing likelihood of confusion.” *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 218 USPQ 390, 396 (Fed. Cir. 1983). We therefore find the absence of actual confusion neutral regarding a finding on likelihood of confusion.

### 5. Conclusion as to Likelihood of Confusion

The parties' goods, channels of trade, and classes of purchasers are identical, which reduces the necessary degree of similarity of the marks for confusion to be likely. *In re Viterra,* 101 USPQ2d at 1908 ("[W]here … the goods at issue are identical, 'the degree of similarity necessary to support a conclusion of likely confusion declines.'" quoting *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992)). The parties' marks are sufficiently similar under the first *DuPont* factor, with Tru's mark incorporating the entirety of Double Coin's WARRIOR mark. The factors concerning the sophistication of the purchasers and absence of actual confusion, on the present record, are neutral. Having analyzed and balanced the applicable likelihood of confusion factors in view of the relevant evidence made of record, we find that Double Coin has demonstrated a likelihood of confusion by a preponderance of the evidence.

### D. Tru's Affirmative Defense of Laches

We now consider Tru's affirmative defense of laches. Section 19 of the Trademark Act, 15 U.S.C. § 1069, provides that in "all inter partes proceedings equitable principles of laches, estoppel, and acquiescence, where applicable, may be considered and applied." Laches is an available equitable defense in a cancellation proceeding based upon a likelihood of confusion. *Nat'l Cable Television Ass'n Inc. v. Am. Cinema Editors, Inc.*, 971 F.2d 1572, 19 USPQ2d 1424, 1431 (Fed. Cir. 1991); *Ava Ruha Corp. v. Mother's Nutritional Ctr., Inc.*, 113 USPQ 2d 1575, 1580 (TTAB 2015). "In order to

prevail on the affirmative defense of laches, [Tru] is required 'to establish that there was undue or unreasonable delay by [Double Coin] in asserting its rights, and prejudice to [Tru] resulting from the delay.'" *Ava Ruha Corp.*, 113 USPQ2d at 1580 (quoting *Bridgestone/Firestone Research Inc. v. Automobile Club de l'Ouest de la France*, 245 F.3d 1359, 58 USPQ2d 1460, 1462 (Fed. Cir. 2001)).

### 1. Delay

"We turn first to a calculation of the length of delay between the time when a petitioner first has notice of a defendant and its mark and the time when petitioner files the petition for cancellation." *Ava Ruha Corp.,* 113 USPQ2d at 1580. Double Coin "must be shown to have had actual knowledge or constructive notice of [respondent's] trademark use to establish a date of notice from which delay can be measured." *Id.* "'In the absence of actual knowledge [of trademark use] prior to the close of the opposition period, the date of registration is the operative date for laches,' as it provides constructive notice to petitioner of the registrant's claim of ownership." *Id.* (quoting *Teledyne Tech. Inc. v. Western Skyways Inc.*, 78 USPQ2d 1203, 1210 n.10 (TTAB 2006), *aff'd mem.*, Appeal Nos. 2006-1366 and 1367 (Fed. Cir. 2006)).

Here, Tru does not identify in its brief any date by which Double Coin had actual knowledge of Tru's use of the ROAD WARRIOR mark. Thus, the date of issuance of Tru's ROAD WARRIOR registration, September 1, 2015, is the operative date for the laches period to have begun. Double Coin filed its Petition for Cancellation on May

25, 2016 – eight months later.[29] Tru has cited no case in which an eight-month period of delay was found to be unreasonable,[30] and we find this is an insufficient period to be considered undue or unreasonable delay for laches to apply.

### 2. Prejudice

"Laches is 'principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties.'" *Bridgestone/Firestone,* 58 USPQ2d at 1463 (quoting *Galliher v. Cadwell*, 145 U.S. 368, 373 (1892)). Mere delay in asserting a trademark-related right does not necessarily result in changed conditions sufficient to support the defense of laches. There also must have been some detriment suffered due to the delay. *See Bridgestone/Firestone*, 58 USPQ2d at 1463 (citing *Advanced Cardiovascular Sys. v. Scimed Life Sys.*, 988 F.2d 1157, 26 USPQ2d 1038, 1041 (Fed. Cir. 1993)). "Prejudice is generally shown by the fact that in reliance on petitioner's silence, respondent built up a valuable business and good will around the mark during the time petitioner never objected." *Alfacell Corp. v. Anticancer Inc.,* 71 USPQ2d 1301, 1307 (TTAB 2004).

---

[29] Tru's Brief, 65 TTABVUE 21-22.

[30] *Cf. Kemi Organics, LLC v. Gupta*, 126 USPQ2d 1601 (TTAB 2018) (Petitioner's delay of a little less than three years in seeking cancellation of Respondent's registration was found not unreasonable under the circumstances.)

Two general categories of prejudice may flow from an unreasonable delay: evidentiary prejudice at trial due to loss of proof or the memory of witnesses, and economic prejudice based on loss of time or money or foregone opportunity. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 22 USPQ2d 1321, 1328-29 (Fed. Cir. 1992) (en banc), *overruled in part on other grounds*, *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954, 121 USPQ2d 1873 (2017). Respondent does not argue that it suffered prejudice at trial (e.g., loss of evidence or memory of witnesses), only economic prejudice.[31] We thus consider only that claim.

Economic prejudice arises when a defendant suffers the loss of monetary investments or incurs damage that likely would have been prevented by an earlier suit. *Aukerman*, 22 USPQ2d at 1329. A nexus must be shown between the delay in filing suit and the expenditures; the alleged infringer must change his position because of and as a result of the plaintiff's delay. The essential inquiry is to determine if there was a change in the economic position of the alleged infringer during the period of delay. *State Contr. & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 68 USPQ2d 1481, 1487 (Fed. Cir. 2003).

Tru's testimony and evidence show that most of its promotional expenditures directed to the ROAD WARRIOR mark and tire products occurred **after** Double Coin

---

[31] Tru's Brief, 65 TTABVUE 22-23.

filed its petition to cancel the ROAD WARRIOR registration.[32] Thus, it cannot be said that Double Coin's delay affected Tru's investment in, development of, commercial use of, or promotion of its ROAD WARRIOR mark. *Esquire Sportswear Mfg. Co. v. Genesco Inc.,* 141 USPQ 400, 403 (TTAB 1964) ("[T]he facts in this proceeding cannot support any claim of damage to applicant arising from opposer's supposedly 'inaction so as to estop opposer from objecting to the registration sought by applicant.'").

We therefore find that Tru has not sufficiently shown that it suffered economic prejudice due to Double Coin's delay in petitioning for cancellation for laches to apply.

## III.    Tru's Abandonment Counterclaim

Abandonment due to nonuse of a mark is defined as use that

> has been discontinued with an intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. 'Use' of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

 Trademark Act Section 45, 15 U.S.C. § 1127. According to the statutory language and legislative history, "nonuse" of a mark for abandonment purposes means "no bona fide use of the mark made in the ordinary course of trade," and this is to be interpreted with flexibility to encompass a variety of commercial uses. *Lewis Silkin LLP v. Firebrand LLC*, 129 USPQ2d 1015, 1018 (TTAB 2018).

In its First Amended Answer, Tru alleges the following grounds for abandonment:

---

[32] Abotbool Confd'l Decl., ¶¶ 10-16, Exhs. 8-10, 13-14.

1. Petitioner has abandoned, without intent to resume use, its trademark and therefore it cannot assert this mark against Registrant.

2. Petitioner is not importing or using in commerce, any goods associated with Petitioner's mark, as interpreted in 15 U.S. Code § 1127 and TMEP § 901.02.

3. Petitioner admits to having not imported goods marked with their asserted WARRIOR mark since at least April 16, 2015 to present.

4. On information and belief, contrary to Petitioner's assertions, Petitioner's non-use of its asserted trademark has exceeded 3 years of time.

5. However, even if its non-use is less than three years as Petitioner admits, Petitioner has definitively abandoned its mark by ceasing use and publicly declaring an intent not to resume use by refusing to import tires into the United States, solely, due to the antidumping duties. See Press Article, a true and accurate copy attached as Exhibit A.

6. In Exhibit A, Petitioner, using industry press, publishes, acknowledges, and affirms that Petitioner is not importing tires and selling them in the US because of the tariff on Chinese made tires. Ex. A. at p. 1("The OTR tariff is prompting Double Coin to halt the shipment of those OTR tires to the U.S.").

7. Petitioner admits that its anti-dumping prohibition has no end in sight and therefore it is not reasonably foreseeable it will be resolved in the future. Published information from the U.S. Department of Commerce indicates the dumping prohibition will continue indefinitely. See Exhibit B (http://enforcement.trade.gov/ download/factsheets/ factsheetprc-truck-bus-tires-ad-cvd-ar-initiation-021916.pdf).

8. Further, on information and belief, Petitioner is not well known.

9. Registrant has spent $1,000,000 on marketing since ROAD WARRIOR registered and sales of over $4,000,000. Registrant's use and distinctiveness exceeds Petitioner's.

10. Registrant has captured the market and minds of consumers.

In addition, for the first time in its brief,[33] Tru asserts that, upon resuming tire sales in the United States, Double Coin used a form of the WARRIOR mark different from the registered WARRIOR mark (i.e., with different stylization), that this constituted a material alteration of the mark as registered, and that, in the alternative, this constituted Double Coin's abandonment of the mark.

### A. Tru's Standing to Maintain Abandonment Counterclaim

Tru has standing to maintain its cancellation counterclaim based on Double Coin's assertion of its WARRIOR (Stylized) registration against Tru in its Petition to Cancel Tru's ROAD WARRIOR registration. *Couch/Braunsdorf Affinity, LLC*, 110 USPQ2d at 1462 (citing *Ohio State Univ. v. Ohio Univ.*, 51 USPQ2d 1289, 1293 (TTAB 1999) ("[A]pplicant's standing to assert the counterclaim arises from applicant's position as a defendant in the opposition and cancellation initiated by opposer")).

### B. Factual Background on Tru's Abandonment Counterclaim

To place Tru's abandonment counterclaim in context, we believe it helpful to describe Double Coin, its corporate structure and means of doing business, and the timeline and circumstances leading up to and after Double Coin's temporary withdrawal of WARRIOR branded tires from the United States market.

---

[33] Tru's Brief, 65 TTABVUE 14-16.

Huayi Group, of the People's Republic of China ("China"), is the parent company that owns a controlling interest in Double Coin, also of China.[34] Double Coin, in turn, owns a controlling interest in China Manufacturers Alliance, LLC ("CMA") of California.[35] CMA, since 2007, has been the exclusive United States distributor of WARRIOR tires imported from China.[36]

In January 2015, the United States Department of Commerce International Trade Administration ("DOC/ITA") imposed an 88% tariff on Double Coin's passenger car and light truck tires imported to the United States from China, making sales of these tires in the United States non-competitive.[37] From May 2014 to April 2015, CMA sold out and exhausted its inventory of WARRIOR passenger car and light truck tires originating from Double Coin in China, with Double Coin ceasing all further imports into the United States.[38]

---

[34] Jin Decl., ¶ 5; Yang Decl., ¶ 5.

[35] Yang Decl., ¶ 3.

[36] Jin Decl., ¶¶ 6-7; Yang Decl., ¶¶ 4 and 7; Jin Rebuttal Decl., ¶¶ 5-7.

[37] Jin Decl. ¶ 9; Yang Decl., ¶¶ 8-9; Yang Rebuttal Decl., ¶¶ 4-7; Jin Rebuttal Decl. ¶¶ 5-7. Tru argues in its brief that its tires too are sourced from China, and that Tru also pays tariffs on its tires imported into the United States. Tru's Brief, 65 TTABVUE 12. However, Tru pays nowhere near the level of tariffs imposed upon Double Coin's tires imported from China. Abotbool Cross-Exam Tr., pp. 24-25, 49-56.

[38] Phillips Decl., ¶¶ 18-19, Exh. 6; Jin Decl. 10; Yang Decl., ¶¶ 7, 14 and 19; Murphy Decl., ¶ 3; Yang Rebuttal Decl., ¶¶ 4-7.

In January 2016, the DOC/ITA also imposed a 61% tariff on Double Coin's heavy duty truck and bus tires originating from China.[39] In March 2017, the United States International Trade Commission overruled the DOC/ITA, and lowered the tariffs on heavy duty truck and bus tires imported from China to the United States.[40] The current tariff for WARRIOR heavy duty truck tires from China is 10%.[41]

Following the DOC/ITA's imposition of the 88% tariff on Double Coin's passenger car and light truck tires, Double Coin's parent, Huayi Group, developed a plan to remove applicability of this tariff by producing passenger car and light truck tires outside of China, ultimately settling upon production in Thailand.[42] Construction on the Thai manufacturing facility was contracted for in May 2016,[43] commenced in October 2016,[44] and was completed in December 2017.[45]

---

[39] Yang Decl., ¶ 14.

[40] Yang Decl., ¶ 15; Jin Rebuttal Decl., ¶ 23; Phillips Second/1 Rebuttal Decl., ¶ 3.

[41] Jin Rebuttal Decl., ¶ 26.

[42] DNOR Exh. 12; Jin Decl., ¶ 11; Yang Decl., ¶ 21; Jin Rebuttal Decl., ¶¶ 9-12; Phillips Second/1 Rebuttal Decl., ¶ 9.

[43] Yang Rebuttal Decl., ¶ 9, Exh. 1.

[44] Jin Rebuttal Decl., ¶ 13, Exh. 1.

[45] Yang Decl., ¶ 22.

Shipments to the United States of WARRIOR-branded heavy duty truck tires from Double Coin's China facility began in January 2018.[46] Also in January 2018, CMA created a new price list for the resumed sale of WARRIOR tires in the United States.[47] CMA's first sale of tires to a United States customer of WARRIOR-branded heavy duty tires from Double Coin's China facility occurred on April 3, 2018.[48] During the period that Double Coin had ceased shipments of WARRIOR tires into the United States, its website at http://www.warriortire-us.com remained accessible without changes to its content, and at all times contained images of WARRIOR tires.[49]

Double Coin's independent industry expert concerning industry customs and practice in connection with the purchase of products manufactured in China for shipment to and sale in the United States, Rosemary Coates, opined that the approach taken to avoid the high DOC/ITA tariffs is one undertaken in other industries, such as the furniture industry.[50] Tru did not depose Ms. Coates, nor did

---

[46] Jin Decl., ¶ 17; Yang Decl., ¶ 13; Phillips Decl., ¶ 6, Exhs. 4-6; Yang Decl., ¶ 16; Jin Rebuttal Decl., ¶ 24; Phillips Second/1 Rebuttal Decl., ¶ 14, Exhs. 1-3. Manufacture of WARRIOR passenger car and light truck tires in Thailand for export to the United States did not resume until December 2018, Yang Rebuttal Decl., ¶ 12; Jin Rebuttal Decl., ¶ 9, and marketing activities in the United States directed to these classes of tires did not begin until the latter half of 2018. Phillips Second/2 Rebuttal Decl., 18-21, Exhs. 10-13.

[47] Phillips Decl., ¶ 7, Exh. 7; Phillips Second/1 Rebuttal Decl., ¶ 15, Exh. 4.

[48] Phillips Decl., ¶ 8, Exh. 8; Phillips Second/1 Rebuttal Decl., ¶ 15, Exh. 5.

[49] Murphy Decl., ¶ 11; Jin Rebuttal Decl., ¶¶ 21-22; Phillips Rebuttal Decl., ¶¶ 3-4.

[50] Coates Rebuttal Decl., Exh 1 (Expert Witness Report), ¶¶ 9-14. Ms. Coates also opined that Double Coin's securing of a production and export facility outside of China, from which United States import tariffs would not be as high, was reasonable under the circumstances.

Tru retain and proffer a report of its own industry expert on the topics she covered. Therefore, Ms. Coates' opinions stand unrebutted.

### C. Allegation of Abandonment by Express Declaration

In its brief, Tru makes much of Double Coin's August 2015 announcement in MODERN TIRE DEALER, an industry publication, stating its intention to halt shipments of tires to the United States on which the high tariffs had been imposed.[51] The cited article, entitled "Double Coin is 'considering' a U.S. factory," also refers to efforts by Double Coin's parent, Huayi Group, to seek production facilities outside of China, including possibly in the United States itself, in order to bring its tire sales back to the United States:

> Double Coin Holdings Ltd. is considering an expansion of its manufacturing facilities, and for the first time the Chinese tire manufacturer is looking at the feasibility of building tires outside of China.

> Liu Xunfeng, chairman of Shanghai Huayi Group Co. which holds 66% ownership control of Double Coin, says the company is "only considering" the options, and that no decision has been made. Still, he mentions both Thailand and the United States are options …

> Xunfeng didn't say what tires a new plant outside of China would produce. "We're not going into those details now." But having production options outside of China would allow Double Coin to expand sales of its off-the-road tires and truck tires in the U.S., and bring its Warrior consumer tire brand to the U.S. as well.

> Already Double Coin exports more tires to the U.S. than any other country, and those exports are in spite of tariffs currently imposed on OTR [over-the-road] tires sized 39 inches and smaller.

---

[51] DNOR, Exh. 12.

The OTR tariff is prompting Double Coin to halt the shipment of those OTR tires to the U.S. CMA still is selling OTR tires from its warehouses in Memphis, Tenn. and Rancho Cucamonga, Calif., but the last shipment of Double Coin OTR tires was sent in April.

In support of its argument that Double Coin's August 2015 announcement stating its intention to halt tire shipments to the United States resulted in Double Coin's abandonment of the WARRIOR mark in the United States, Tru places heavy reliance on *Hiland Potato Chip Co. v. Culbro Snack Foods, Inc.*, 720 F.2d 981, 222 USPQ 790 (8th Cir. 1983). Even if *Hiland Potato Chip* were binding on the Board (which it is not), this decision is inapposite.

In *Hiland Potato Chip*, following the financial difficulties of its production subsidiary and lack of interest in continuing the brand, the plaintiff Hiland sent a communication to customers stating that it was eliminating the Kitty Clover potato chip brand from its portfolio of snack foods, and was changing over to the new brand Hiland. Upon becoming aware of this communication, Hiland's competitor, Culbro, began selling potato chips under the Kitty Clover brand. Ruling on Hiland's infringement suit, the trial court found in favor of Culbro, determining that Hiland had abandoned the Kitty Clover brand. Affirming the trial court's determination of abandonment, the Eighth Circuit Court of Appeals stated: "[a] public announcement of intention to discontinue the sale of a product may be a circumstance from which an intent not to resume may be inferred," *Hiland Potato Chip*, 222 USPQ at 792 (citing *Sutton Cosmetics (P.R.) Inc. v. Lander Co.,* 170 USPQ 461, 462 (S.D.N.Y. 1971), *aff'd as modified*, 455 F.2d 285 (2d Cir. 1972)).

Here, Double Coin's August 2015 announcement stating its intention to halt tire shipments to the United States in view of its tariff difficulties falls far short of a statement of an intention permanently to discontinue the sale of WARRIOR tires in this country, particularly when the statement includes a declaration of intention of Double Coin's parent, Huayi Group, to seek production facilities outside of China, including possibly in the United States, in order to bring Double Coin's WARRIOR tire sales back to the United States.

We therefore do not find that Double Coin's August 2015 announcement in industry press constitutes an intentional abandonment of the WARRIOR mark, that is, a statement expressly establishing Double Coin's intent not to resume use of the mark.

## D. Double Coin's Activities During the Period of Non-Use

Tru argues in its brief that Double Coin's cessation of importation and sales of WARRIOR branded tires in the United States from 2015 to 2018 should not be excused by the DOC/ITA's tariffs, and that, even if Double Coin did not expressly abandon the mark, the extended period of non-use effectuated abandonment, in fact. Double Coin argues that these circumstances do constitute excusable non-use, and that abandonment did not occur as a result.[52]

---

[52] Tru's Brief, 65 TTABVUE 12-13; Double Coin's Rebuttal Brief, 66-67 TTABVUE 15-21.

In *Rivard v. Linville*, 133 F.3d 1446, 45 USPQ2d 1374, 1376 (Fed. Cir. 1998), the

Federal Circuit Court of Appeals stated:

> To prove excusable nonuse, the registrant must produce evidence
> showing that, under his particular circumstances, his activities are
> those that a reasonable businessman, who had a bona fide intent to use
> the mark in United States commerce, would have undertaken. *See
> Imperial Tobacco Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 14 USPQ2d
> 1390, 1394-95 (Fed.Cir.1990) (requiring evidence "with respect to what
> activities it engaged in during the nonuse period or what outside events
> occurred from which an intent to resume use during the nonuse period
> may reasonably be inferred").[53]

Tru suggests that Double Coin was required to continue use of the mark, despite

its business judgment that doing so based on its then-source of manufacturing was

---

[53] *Rivard* and *Imperial Tobacco* both involved challenges to registrations that had issued under Trademark Act Section 44, 15 U.S.C. § 1126, which does not require proof of use in commerce prior to registration. As a result, in both cases use of the mark had never commenced, and the "excusable nonuse" issue was whether the registrant provided sufficient proof of its intent to commence use. In other words, to paraphrase *Imperial Tobacco*, the issue decided was whether the "activities [the registrant] engaged in during the nonuse period or what outside events occurred" were evidence "from which an intent to [commence] use during the nonuse period may reasonably be inferred." 14 USPQ2d at 1395. In the case before us, use of the WARRIOR mark commenced prior to registration, but was discontinued. We have found above that Double Coin's discontinuation of use of the mark, in-and-of-itself, did not work an express abandonment of the mark, so the issue here is whether Double Coin's activities following its cessation of use reflected an intent not to resume use – which it did not. *See Executive Coach Builders, Inc. v. SPV Coach Co.*, 123 USPQ2d 1175, 1198-99 (TTAB 2017) (in assessing excusable nonuse in this context, "plans must be to resume commercial use of a mark within the 'reasonably foreseeable future'") (quoting *Hornby v. TJX Cos.*, 87 USPQ2d 1411, 1421-22 (TTAB 2008) (internal quotation omitted)). Although the term "excusable nonuse" in abandonment cases pertains to either the resumption or commencement of use, depending upon whether the involved registration issued under Trademark Act Sections 1(a), 44 or 66, 15 U.S.C. §§ 1051(a), 1126 or 1141f(a), the same standard for abandonment under Section 45 of the Act applies in all three contexts.

not feasible,[54] or to run the risk of abandoning its mark. Contrary to Tru's contention, however, our task is not to determine whether Double Coin's decision to discontinue sales in the United States in response to the imposition of tariffs, in-and-of-itself, was "excusable," that is, a reasonable business judgment under the circumstances. That is not what the statute requires us to do. Rather, as noted above, we must examine the activities that Double Coin engaged in during the period following cessation of use to determine whether we may infer from those circumstances an intent not to resume use. *Exec. Coach Builders,* 123 USPQ2d at 1198-99.

### E. Non-Use, Burdens of Proof on Abandonment and Intent to Resume Use

Double Coin concedes its last sale of WARRIOR passenger car and light truck tires in the United States occurred on April 16, 2015.[55] Double Coin's renewed importation of WARRIOR heavy truck tires in the United States occurred between January 10 and February 14, 2018,[56] and CMA's first bona fide sale of these tires to a United States customer was on April 3, 2018.[57] Whether we consider the January 2018 importation or the April 3, 2018 sale as the resumption of use of the WARRIOR mark in commerce, under Trademark Act Section 45, 15 U.S.C. § 1127, the record does not

---

[54] 65 TTABVUE 12-13.

[55] Tru's First Amended Answer and Counterclaim, 22 TTABVUE ¶ 3; Double Coin's Reply, 25 TTABVUE, ¶ 3.

[56] Phillips Second/1 Rebuttal Decl., ¶ 14, Exhs. 1-3.

[57] Phillips Second/1 Rebuttal Decl., ¶ 16, Exh. 5.

show "[n]onuse for 3 consecutive years," *id.*, such that we could make a finding of prima facie abandonment.

Since it did not definitively show that Double Coin ceased use of the WARRIOR mark in commerce for at least 3 consecutive years, the burden of demonstrating Double Coin's abandonment remains on Tru. *P. A. B. Produits et Appareils de Beaute, v. Satinine Societa in Nome Collettivo Di S.A. E. M. Usellini*, 570 F.2d 328, 196 USPQ 801, 804-05 (CCPA 1978) ("[A]bandonment being in the nature of a forfeiture, must be strictly proved." Reversing the TTAB, the CCPA held that where the petitioner could not conclusively prove the respondent's non-use for the statutory period (then, 2 years), the presumption of abandonment did not apply). Tru thus must affirmatively establish a prima facie case by a preponderance of the evidence that Double Coin discontinued use of the mark with the intent not to resume use. *FirstHealth of Carolinas, Inc. v. CareFirst of Md., Inc.*, 479 F.3d 825, 81 USPQ2d 1919, 1922 (Fed. Cir. 2007).

Given, at the very least, Double Coin's non-use of the WARRIOR mark in commerce for 2 ½ years, we must review Double Coin's demonstrated efforts during this period to determine whether its cessation of use of the mark was with the intent not to resume use. In addition to the MODERN TIRE DEALER article made of record by Tru, the record contains evidence that shows Double Coin: 1) engaging in various activities between May 2016 and December 2017 leading up to the opening of a new production facility in Thailand to remove the applicability of the DOC/ITA's high

38

tariffs on passenger car and light truck tires of Chinese origin,[58] 2) addressing the DOC/ITA's high tariffs on heavy truck tires of Chinese origin and the ITC's subsequent lowering of the tariffs,[59] 3) renewing importation and sale of its heavy duty truck tires beginning in January 2018, 4) preparing a new price list simultaneous with the resumed importation of WARRIOR heavy truck tires from China, and 5) maintaining the http://www.warriortire-us.com website on the Internet during the period of non-use.

In *Crash Dummy Movie, LLC v. Mattel, Inc.*, 601 F.3d 1387, 94 USPQ2d 1315 (Fed. Cir. 2010), Mattel, in December 1997, acquired the portfolio of CRASH DUMMIES toy marks from Tyco Industries, which at the time was experiencing financial difficulties. Mattel did not re-introduce CRASH DUMMIES toys into the marketplace until December 2003. In March 2003, Crash Dummy Movie ("CDM") filed an intent-to-use application to register the CRASH DUMMIES mark for games and playthings, which Mattel successfully opposed. The parties agreed that their respective marks would cause a likelihood of confusion. The only disputed issue was whether Mattel was entitled to claim common law rights to the CRASH DUMMIES marks predating CDM's March 2003 application filing date. The Board found that,

---

[58] Jin Decl., ¶¶ 11-14; Yang Decl., ¶¶ 21-22; Coates Rebuttal Decl., ¶¶ 10 and 12; Yang Rebuttal Decl., ¶¶ 9-12, Exh. 1; Jin Rebuttal Decl., ¶¶ 10-18, Exhs. 1-3; Phillips Second/1 Rebuttal Decl., ¶¶ 8-10.

[59] Double Coin's Rebuttal Brief, 66-67 TTABVUE 15-16; Yang Decl., ¶¶ 11-12; Yang Rebuttal Decl., ¶¶ 14-15.

while there was prima facie abandonment of the CRASH DUMMIES marks due to Mattel's 6 years of non-use, Mattel overcame the presumption of abandonment by proof of its intent to resume use. *Crash Dummy Movie*, 94 USPQ2d at 1315-16.

The Federal Circuit affirmed the Board's factual findings supporting Mattel's intent to resume use of the CRASH DUMMIES marks during the period of non-use, consisting of the following: 1) discussions with KB Toys about becoming the exclusive retailer of CRASH DUMMIES toys, even though the parties ultimately did not enter into that agreement; 2) recordation of Tyco's trademark assignment with the USPTO in 1998; 3) Mattel's research and development efforts from 2000 to 2003 for a new line of CRASH DUMMIES toys; and 4) Mattel's shipment of CRASH DUMMIES toys in December 2003, supporting testimony about Mattel's research and development efforts in the early 2000s. *Crash Dummy Movie*, 94 USPQ2d at 1317-18.

As in *Crash Dummy Movie*, which involved a far longer period of nonuse, we find Double Coin's efforts here during the period of nonuse to be sufficient evidence that Double Coin's cessation of use was unaccompanied by an intent not to resume use. When it announced discontinuation of sales in the United States due to the imposition of high tariffs, Double Coin also publicly stated that it intended to find an alternative source of manufacture, including possibly in the United States.

Double Coin subsequently followed through on its intention to build a new factory to source the goods outside China by building a factory in Thailand, which Double Coin's expert Ms. Coates explained "included finding a suitable location, obtaining

operating permits, building the actual factory, acquiring and installing manufacturing equipment, hiring and training workers, beginning production, and achieving quality standards for export to the U.S." Coates Rebuttal Decl., ¶ 12.[60] These are not the statements and acts of an entity that intended to leave the U.S. market permanently, never to return. We find that Tru did not prove abandonment by a preponderance of the evidence.

### F. Non-Use by Material Alteration

In its brief, Tru claims that, upon re-introduction of WARRIOR tires into the United States, Double Coin so materially altered the commercial impression of the mark as registered as to effectuate an abandonment of that version of the mark (shown immediately below, left):[61]





Mark as shown in Reg. No. 3,335,545          *See* PNOR, Exhs. C, D and N

Double Coin objects that Tru raised this issue for the first time during briefing and, without waiving that objection, contends that its WARRIOR mark now in use is not a material alteration of its registered mark, and moreover that the registered

---

[60] See also, Jin Decl., ¶¶ 11-14; Yang Decl., ¶¶ 21-22; Yang Rebuttal Decl., ¶¶ 9-12, Exh. 1; Jin Rebuttal Decl., ¶¶ 10-18, Exhs. 1-3; Phillips Second/1 Rebuttal Decl., ¶¶ 8-10.

[61] Tru's Brief, 65 TTABVUE 14-16. Generally "when a trademark owner uses a modified version of its registered trademark, it may avoid abandonment of the original mark only if the modified version 'create[s] the same, continuous commercial impression.'" *Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 116 USPQ2d 1129, 1133 (Fed. Cir. 2015).

version and currently-used version create the same commercial impression to potential tire purchasers.[62]

We need not reach the material alteration question here, however, because Tru never raised the abandonment by material alteration allegation in its counterclaim, nor in any amendment thereto during the course of the proceedings. Having not been pled, Tru cannot move forward at trial on this counterclaim. *See Kohler Co. v. Baldwin Hardware Corp.*, 82 USPQ2d 1100, 1103 n.3 (TTAB 2007) (unpleaded allegations will not be heard).

We further find that Tru's abandonment by material alteration claim was not tried by express or implied consent. Fed. R. Civ. P. 15(b); *see, e.g.*, *Hornby v. TJX Cos. Inc.*, 87 USPQ2d 1411, 1415 (TTAB 2008). Implied consent can only be found where the non-offering party (1) raised no objection to the introduction of evidence on the issue, and (2) was fairly apprised that the evidence was being offered in support of the issue. *Citigroup v. Capital City Bank,* 94 USPQ2d at 1656 "The question of whether an issue was tried by consent is basically one of fairness. The non-moving party must be aware that the issue is being tried, and therefore there should be no doubt on this matter." *Morgan Creek Prods. Inc. v. Foria Int'l Inc.*, 91 USPQ2d 1134, 1139 (TTAB 2009). Here, there is considerable doubt whether Double Coin was aware

---

[62] Double Coin's Rebuttal Brief, 66-67 TTABVUE 23-24.

that abandonment by material alteration was being tried given that it was raised for the first time in Tru's brief.

In sum, we find that Tru has not met its burden of proof with respect to its abandonment counterclaim.

## IV. Decision

We **grant** Double Coin's petition to cancel Tru's ROAD WARRIOR registration on the basis of priority and likelihood of confusion, and **deny** Tru's cancellation counterclaim. Registration No. 4805521 for the ROAD WARRIOR mark will be cancelled in due course.